**INTERNATIONAL HARVESTER COMPANY and International Harvester Credit Corporation, Appellants,**

**v.**

**Don GLENDENNING, Appellee.**

**No. 18250.**

Court of Civil Appeals of Texas, Dallas.

Jan. 10, 1974.

Rehearing Denied Jan. 31, 1974.

David R. McAtee, Thompson, Knight, Simmons & Bullion, Dallas, for appellants.

J. E. Abernathy, Abernathy & Orr, McKinney, for appellee.

CLAUDE WILLIAMS, Chief Justice.

This appeal is from a take nothing judgment in a suit to recover damages for wrongful conversion of three tractors.

International Harvester Company and International Harvester Credit Corporation (both hereinafter referred to as International) brought this action against Don Glendenning in which it was alleged that International was the holder of a duly perfected security interest in three new International Harvester tractors; that such security agreements had been executed in favor of International by Jack L. Barnes, doing business as Barnes Equipment Company, an International Harvester dealer; that Barnes and Glendenning had entered into a fraudulent conspiracy wherein Glendenning had wrongfully purchased the three tractors from Barnes; that Glendenning was not a buyer in the ordinary course of business; that he did not act in a commercially reasonable manner and did not act honestly, therefore taking the tractors subject to International's security interest. It was further alleged that Barnes and Glendenning had wrongfully conspired to convert the ownership of the tractors and to deprive International, by fraud and deceit, of its ownership of the tractors by virtue of their security interest therein in that (1) Glendenning acquiesced in falsifying a retail order form so that it was made to indicate receipt of $16,000 in cash and the trade-in of two used tractors allegedly worth a total of $8,700, while in fact both Glendenning and Barnes knew that Glendenning had only paid the sum of $16,000 in cash, a sum far below the market value of the tractors; (2) that Glendenning, in the furtherance of the conspiracy and unlawful conversion, represented to a representative of International that he, Glendenning, had, in fact, traded certain used tractors to Barnes, which was untrue; and (3) Glendenning removed the new tractors in which International had a security interest to the State of Louisiana where he sold the same and converted the proceeds to his own use and benefit. International sought damages in the sum of $24,049.99 which was alleged to be the reasonable value of the tractors on the date of conversion.

Glendenning answered by a general denial and with the special defense to the effect that he purchased the tractors in the ordinary course of business and that such purchase was made in good faith and without any knowledge of any security interest held by International. Prior to trial Glendenning sought and obtained the benefit of the terms of Texas Rules of Civil Procedure, rule 266.[1] In taking this action Glendenning admitted that International would be entitled to recover as pleaded in their first amended original petition except as defeated by Glendenning's sole affirmative defense. Thus the only issue before the court was whether Glendenning was a buyer of the tractors in the ordinary course of business as that term is defined in the Texas Business and Commerce Code, V.T.C.A.

The court submitted the case to the jury on one special issue:

Do you find from a preponderance of the evidence that on the time and occasion in question, the defendant, Don Glendenning, was a buyer in the ordinary course of business?

In connection with this issue the court instructed the jury that the term "buyer in

---

1. Rule 266 provides, in part:
"Except as provided in Rule 269 the plaintiff shall have the right to open and conclude both in adducing his evidence and in the argument, unless the burden of proof on the whole case under the pleadings rests upon the defendant, or unless the defendant or all of the defendants, if there should be more than one, shall, after the issues of fact are settled and before the trial commences, admit that the plaintiff is entitled to recover as set forth in the petition, except so far as he may be defeated, in whole or in part, by the allegations of the answer constituting a good defense, which may be established on the trial; which admission shall be entered of record, whereupon the defendant, or the defendants, if more than one, shall have the right to open and conclude in adducing the evidence and in the argument of the cause . . . ."

ordinary course of business" means "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of the third party in the goods buys in the ordinary course from a person in the business of selling goods of that kind."

The court instructed the jury that by the term "good faith" means "honesty in fact in the conduct or transaction concerned."

The jury answered the special issue "Yes."

Prior to the submission of the issue to the jury International had timely filed its motion for an instructed verdict in which it contended that there was no evidence of probative force to justify the submission of any issue to the jury and that it should recover, as prayed for. Subsequent to the receipt of the jury verdict International filed its motion for judgment *non obstante veredicto* in which it contended that there was no evidence of probative force to support the affirmative answer of the jury to the sole special issue submitted and that such answer should be disregarded and judgment rendered for the amount pleaded. These motions were overruled and judgment was rendered that International take nothing.

In twenty-five points of error, appellants primarily seek a reversal and rendition of this judgment. However, we have concluded that the main thrust of appellants' contentions is contained in points 1, 4, 6, 7, 10, 11, and 12 in which it is asserted that there is no evidence of probative force to support the answer of the jury to the sole special issue submitted and that the motion for judgment *non obstante veredicto* should have been sustained because the evidence conclusively establishes, as a matter of law, that Glendenning was not a purchaser in the ordinary course of business as defined by the court. We sustain these points and reverse and render the judgment.

The applicable law is found in Texas Business and Commerce Code Annotated (Vernon 1968). Section 9.307 of the code entitled "Protection of Buyers of Goods" provides that "(a) a buyer in ordinary course of business (Subdivision (9) of § 1.201) . . . . takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence."

Section 1.201(9) of the code, referred to in the preceding section, provides: "[A] person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker."

Section 1.201(19) of the code defines "good faith" as being: ". . . . honesty in fact in the conduct or transaction concerned."

■ With these rules in mind we turn to a resolution of the law question presented, that is, whether there is any evidence of probative force to sustain the answer of the jury to the special issue submitted. Our determination of the question is governed by the well established rule that we must consider only the evidence which supports the jury verdict, rejecting all evidence and inferences to the contrary. Sobel v. Jenkins, 477 S.W.2d 863 (Tex.1972). Our supreme court in Associates Discount Corporation v. Rattan Chevrolet, Inc., 462 S.W.2d 546 (Tex.1970), stated that the question of whether a sale is in the ordinary course of business is a mixed question of law and fact and that such question cannot be resolved without viewing all of the circumstances surrounding the sale. We have examined the record in the light of these rules.

The material testimony presented to the court and jury may be summarized, as follows:

At the time of the trial of this case appellee Glendenning was a farmer in Collin

County. He described himself as being not only a farmer but a trader. He said that he frequently traded tractors and other farm equipment as well as anything else from which he could make a profit. He has had almost twenty years' experience in the business of buying and selling farm tractors. In the early 1950's he owned an International Harvester dealership in Frisco, Collin County, Texas. From 1956 to 1960 he was a salesman for International Harvester. After leaving International he began trading farm equipment of his own, using some of the implements on his own farm and holding others strictly for resale. For many years he had been familiar with International Harvester's custom of "floor-planning" tractors and other farm equipment. By this plan International would supply tractors and other equipment to the dealers who, in turn, would give International a note and security agreement to protect International in its investment. When a dealer sold a piece of equipment from the floor he would pay International the amount due. He also testified that he knew that when used tractors were taken as trade-ins by International Harvester dealers such used tractors were also mortgaged or covered by the security agreement to International. He admitted that International Harvester always kept close tabs to see what was wrong with the used tractors and that International always wanted to know what its dealers traded for in connection with new equipment sales. Glendenning acknowledged that any false information contained on a retail order form would provide incorrect information concerning the transaction to International Harvester, or any other lender.

Glendenning said that he had known Jack L. Barnes, an International Harvester dealer, for two or three years and during that time he had bought several tractors from him. In the early part of July 1971 Barnes, and Joe Willard, another friend, came to his home in Collin County and talked to him about buying some tractors. He said that Barnes had eight tractors to sell but that he was only interested in buying three of the machines. Barnes described the tractors and told Glendenning that he wanted $18,500 for the three. Glendenning declined that offer but told Barnes that he would give $16,000 cash for the three. Barnes accepted the offer.

At the time of this transaction Glendenning knew that the three tractors were reasonably worth $22,500. Willard went to Vernon, Texas, and got the tractors and delivered them to Mr. Glendenning's home. Glendenning asked Willard to bring him a bill of sale when he returned with the tractors. Willard received from Barnes an instrument entitled "Retail Order Form" dated July 5, 1971, which recited that Glendenning had purchased from Barnes three tractors for the total price of $24,700 with a cash payment of $16,000 leaving a balance of $8,700. The instrument recited that Glendenning had traded in four tractors with values totaling $8,700 so that the total consideration of $24,700 was shown to have been paid.

Glendenning said that the next day Barnes came to his home to get payment for the tractors. At that time Glendenning requested a "bill of sale" and he watched Barnes fill in another retail order form similar to the one that he had obtained from Willard the day before. This order form stated that Glendenning had traded in four tractors worth $8,700 in addition to payment of $16,000 in cash making a total purchase price of $24,700. After Barnes had completed filling out this form and signed the same Glendenning said that he put his signature on the instrument also. He then gave Barnes $16,000.

Concerning the contents of the retail order form Glendenning said that at the time Barnes filled in the blanks indicating that Glendenning was trading in four tractors he knew that he was not trading anything and that he did not question Barnes about the trade-in information contained in the form. He admitted that he did not ask Barnes whether the tractors which he purchased were free and clear nor did he call International to determine whether or not

such company had a mortgage on the tractors. Glendenning admitted that he knew that the information contained in the printed form concerning trade-ins and total consideration for the sale of the three new tractors was false; that he knew of this falsification when he signed the order form; and that he also knew that such falsification would mislead any creditors relying on the document such as a dealer, a manufacturer or a bank lending money with the equipment as collateral. He admitted that at the time of the transaction in question Barnes was probably "trying to come out even" or that he did it to make his books balance. Glendenning admitted that he was suspicious of the manner in which Barnes prepared the order form and confessed that his actions amounted to dishonesty. He said that to his knowledge he had never before signed an order form with false trade-ins. He admitted that such action was "unusual."

A few days after the transaction a Mr. McKinney, collection manager for International Harvester Company, and a representative of International Harvester Credit Corporation, telephoned Glendenning concerning the transaction in question. In that conversation Glendenning told McKinney that he had traded four tractors to Barnes in addition to paying $16,000 cash for the three new International tractors. Glendenning testified that he knew that he had lied to Mr. McKinney concerning the trade-ins and that such oral misrepresentation or lie was dishonest.

After receiving the tractors Glendenning removed them to a barn near Alexandria, Louisiana, although it was his usual practice to place equipment on his own premises or at another dealer's place of business. He subsequently sold the three tractors in Louisiana.

As a part of his direct examination Glendenning testified that he considered the deal to be a purchase of three tractors for $16,000; that he had no side agreement with Barnes; that he thought he was making a good deal; and that he was acting in good faith.

■■■■ At the very beginning of this trial appellee Glendenning confessed the validity of appellants' cause of action against him based upon fraud, conspiracy and conversion, but sought to evade legal liability by assuming, pursuant to Tex.R. Civ.P. 266, the burden of going forward and establishing his sole defense that he was a buyer in ordinary course of business within the meaning of Tex.Bus. & Comm. Code Ann. § 9.307(a) (1968). This assumption carried with it the additional burden of establishing by competent evidence that Glendenning acted in good faith and without knowledge that the sale to him was in violation of the ownership rights or security interest of a third party. Good faith, as the court correctly charged the jury, means honesty in fact in the conduct or transaction concerned. In an effort to establish this affirmative defense and thereby evade liability, appellee Glendenning testified on direct examination with the broad conclusory statement that he had acted in good faith. However, this subjective and conclusory statement was immediately annihilated by factual evidence falling from the lips of Glendenning himself.

Appellee Glendenning's own testimony immediately removes him from the category of an innocent Collin County farmer who seeks to purchase one or more tractors in the ordinary course of business. By his own testimony he has had many years of experience as a tractor dealer, a salesman and one of the most active traders of farm equipment in Collin County. Based upon this experience he is knowledgeable in the very nature of business done by International by "floor-planning" its equipment. With all of this knowledge and information in his possession he purchased the equipment for considerably less than its value, made no investigation of International's security interest, acquiesced in the falsification of the retail order form showing nonexistent trade-ins, and misrepresented the particulars of the transaction

to International's representative by stating that there were, in fact, trade-ins. He confesses that his actions were dishonest.

Thus it is evident to us that Glendenning's own testimony, which is the only material testimony offered, is entirely devoid of honesty in fact and completely negates his contention that he was a buyer in the ordinary course of business within the meaning of the Texas Business & Commerce Code.

While we have been unable to find any Texas authorities decided under this specific provision of the Business & Commerce Code a recent Uniform Commercial Code release notes that the good faith requirement was added "to make it clear that one who buys dishonestly is not within the definition. The 'without knowledge' addition spells out one important type of dishonesty." U.C.C. Release No. 27–1973, 6 Bender's Uniform Commercial Code Service § 1–201 at 1–29 (1965).

The complete picture revealed by all of the material testimony in this case reveals a definite pattern of lies, deceit, dishonesty and bad faith. We find no competent evidence in this record to support the jury's answer to the special issue submitted and therefore the same should have been set aside and disregarded by the trial court.

Appellants, in alternative points of error, present the question that the answer of the jury to the special issue submitted is contrary to the great weight and preponderance of the evidence. Since we have held that, as a matter of law, that there was no evidence of probative force to support the jury's answer to the special issue we are not required to pass upon these "insufficiency of evidence" points. However, should we be in error in our holding that there is no evidence we would sustain these points and hold that the answer of the jury to the special issue submitted is contrary to the great weight and preponderance of the evidence.

We find it unnecessary to pass upon the remaining points presented in appellants'

brief. The judgment of the trial court is reversed and judgment is here rendered that International Harvester Company and International Harvester Credit Corporation do have and recover of and from Don Glendenning the sum of $24,049.99 together with interest thereon at the rate of 6 per cent from date of this judgment until paid.

Reversed and rendered.