MASSEY-FERGUSON, INC., Plaintiff-Appellant, *v.* BENNIE HELLAND, d/b/a Newark Trucking and Implement Company, Defendant-Appellee.

Second District    No. 81-545

Opinion filed April 7, 1982.

Edward B. Tucker, of Tucker and Hollahan, of Mt. Sterling, for appellant.

Paul E. Root, of Root and Condon, of Morris, for appellee.

JUSTICE VAN DEUSEN delivered the opinion of the court:

After a hearing on the issuance of the entry of an order for replevin (Ill. Rev. Stat. 1979, ch. 119, par. 4c), the trial court entered an order denying issuance of the replevin order. Plaintiff appeals the order of denial.

Plaintiff, Massey-Ferguson, Inc., and Colusa Farm Equipment, Inc. (Colusa), entered into a dealer sales and service agreement on October 23, 1980, whereby Colusa became a dealer for Massey-Ferguson Agricultural Machinery. Mr. David Batson, plaintiff's district sales manager and former service supervisor, called on Colusa at least twice a month. Mr. Batson was responsible for being informed of a dealer's financial condition and maintaining a monthly inventory sheet listing all Massey-Ferguson machinery in the dealer's possession. Where a piece of equipment was not on the lot and its absence was not satisfactorily explained by the dealer, the dealer had to immediately settle with plaintiff for the equipment, as required by the floor plan financing agreement between the parties.

In mid-April 1981, Mr. Batson called on Colusa and found machinery missing from the dealer's lot. When the dealer failed to settle for this missing machinery, Mr. Batson terminated Colusa as a Massey-Ferguson dealer.

Defendant Bennie H. Helland is a partner in Newark Trucking and Implement Company, a partnership dealing in the purchase for sale to the public of new and used farm equipment. Between March 18, 1981, and April 14, 1981, Mr. Helland purchased approximately 30 pieces of new and used machinery from Colusa and paid Colusa in cash and/or in trade. Some of these pieces were put on defendant's sales lot, and some were transported to defendant's farm for use. Certain Massey-Ferguson equipment from Colusa had been put up for sale at auction by the defendant on or about March 28, 1981, but only one piece of equipment listed on the replevin complaint had been sold.

On April 30, 1981, plaintiff Massey-Ferguson filed statutory notice of filing of a replevin complaint (Ill. Rev. Stat. 1979, ch. 119, par. 4a) and the replevin complaint itself. The complaint alleged that, pursuant to a security interest from Colusa perfected by filing, plaintiff was lawfully entitled to possession of certain property described in the complaint and allegedly wrongfully detained by defendant. That property, according to the complaint, had not been taken for tax, assessment, or fine levied by virtue of law. (Ill. Rev. Stat. 1979, ch. 119, par. 4.) Further, the complaint alleged that the value of the property taken was $200,000 and that statutory notice had been served.

On June 15, 1981, defendant filed a motion to dismiss for failure to state a cause of action. On June 19, 1981, prior to the hearing on the order

of replevin, this motion to dismiss was heard and denied. Immediately thereafter, a hearing was held on the issuance of the entry of an order for replevin. For the entry of an order for replevin, the court must find as a matter of record that plaintiff has established a *prima facie* case to a superior right to possession of the disputed property and that plaintiff has also demonstrated to the court the probability that he will ultimately prevail on the underlying claim to possession. Ill. Rev. Stat. 1979, ch. 119, par. 4c.

On June 30, 1981, the trial court entered an order denying the petition for an order for replevin. Among the specific findings in that order, the court found that plaintiff's security interest appeared to have been perfected but that plaintiff had failed to establish a *prima facie* case that it would ultimately prevail on the underlying claim to possession. One of the controlling issues to be decided on this appeal is whether the trial court erred in making this finding. As plaintiff recognizes, the decision of the trial court must be against the manifest weight of the evidence in order to cause said decision to be overturned. (*Schulenburg v. Signatrol, Inc.* (1967), 37 Ill. 2d 352, 356; see *American National Bank & Trust Co. v. Mar-K-Z Motors & Leasing Co.* (1974), 57 Ill. 2d 29, 33.) In this case, the trial court's determination is justified by the evidence.

Plaintiff's claim to possession of the goods which are the subject of this replevin action is grounded on a security interest in those goods. Plaintiff insists that the security interest continued in the collateral notwithstanding the disposition of the goods to defendant by plaintiff's dealer Colusa. It is defendant's position that he took the goods in question free of plaintiff's security interest. If so, then plaintiff could not meet the burden of demonstrating the probability of its prevailing on the underlying claim.

According to section 9—306(2) of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 1—101 *et seq.*) (UCC), a purchaser takes free of a security interest where "the disposition was authorized by the secured party in the security agreement or otherwise." (Ill. Rev. Stat. 1979, ch. 26, par. 9—306(2).) In this case, the disposition of collateral "in the ordinary course of business upon customary terms for value received" was authorized in the security agreement (Ill. Rev. Stat. 1979, ch. 26, par. 9—105(1)(*l*)) contained in the dealer sales and service agreement signed by plaintiff and Colusa. Additionally, section 9—307(1) of the UCC provides that "[a] buyer in the ordinary course of business (subsection (9) of Section 1—201) * * * takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence." (Ill. Rev. Stat. 1979, ch. 26, par. 9—307(1).) Section 1—201(9) of the UCC defines "buyer in the ordinary course of business" as follows:

"a person who in good faith without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in the ordinary course from a person in the business of selling goods of that kind * * *."

The gist of plaintiff's argument is that defendant was not a buyer in the ordinary course of business because he did not meet the test of good faith required of a merchant to be entitled to the protection of section 9—307(1) of the UCC. Additionally, plaintiff maintains that Colusa's disposition of collateral to the defendant was not authorized by the secured party because it was not in the ordinary course of business so that defendant is not entitled to protection under section 9—306(2) either.

Therefore, a basic determination which must be made in this case is whether or not the defendant purchased the goods in question in the ordinary course of Colusa's business. If so, the disposition was authorized by the secured party so that defendant took free of the security interest under the terms of section 9—306(2) of the UCC. Also, if defendant purchased the goods in the ordinary course of Colusa's business, in good faith and without knowledge that the sale to him violated plaintiff's ownership rights or security interest, then defendant took free of the security interest created by plaintiff even if, as the court found, the security interest was perfected and even if defendant knew of its existence. Ill. Rev. Stat. 1979, ch. 26, par. 9—307(1).

In support of his position that defendant was not a buyer in the ordinary course of business, plaintiff first contends that defendant was a merchant within the definition of section 2—104(1) of the UCC. Therefore, plaintiff argues, defendant was required to meet the test of "good faith" defined in section 2—103(1)(b) of the UCC (Ill. Rev. Stat. 1979, ch. 26, par. 2—103(1)(b)). This section adds the additional requirement of "the observance of reasonable commercial standards of fair dealing in the trade" to the general definition of "good faith" contained in section 1—201(19) of the UCC, which states " 'good faith' means honesty in fact in the conduct or transaction concerned." Ill. Rev. Stat. 1979, ch. 26, par. 1—201(19).

Plaintiff does not cite any Illinois case, and defendant states on appeal that he has been unable to find any Illinois case, directly on the issue of which "good faith" standard is applicable in determination of whether a merchant buyer is in the ordinary course of business. While courts in some States have held that the definition in section 2—103(1)(b) would be applicable, courts in other States have held that the foregoing definition is applicable in cases arising under the sales act and that the general definition found in section 1—201(19) is to be applied in transactions like the instant case that arise under secured transactions. Annot., 87 A.L.R.3d 11, 42-47 (1978).

A review of the relevant provisions of the UCC reveals that it is the

general definition of "good faith" contained in section 1—201(19) of the UCC that is applicable in cases arising under secured transactions. UCC section 1—201 provides that the definitions contained therein apply to the Act (as a whole) subject to additional definitions contained in subsequent articles, which are applicable to specific articles or parts thereof. (Ill. Rev. Stat. 1979, ch. 26, par. 1—201.) The definition sections in the Uniform Commercial Code-Sales (Ill. Rev. Stat. 1979, ch. 26, par. 2—101 *et seq.*) (sales article) and the Uniform Commercial Code-Secured Transactions (Ill. Rev. Stat. 1979, ch. 26, par. 9—101 *et seq.*) (secured transactions article) each provide that the definitions presented therein apply in the particular article and that, additionally, article 1 contains general definitions also applicable throughout the particular article. (Ill. Rev. Stat. 1979, ch. 26, pars. 2—103(1), (4), and 9—105(1), (4).) These UCC provisions make clear that the definition of "good faith" applicable to a merchant under section 2—103(1)(b) applies to the sales article, and, since the term is not otherwise defined in the secured transactions article, the general definition of "good faith" contained in section 1—201(19) applies to the latter article. This statutory construction is underscored by the Official Comment to section 1—201(19),

> " 'Good faith' whenever it is used in the Code, means at least what is here stated. In certain Articles, by specific provision, additional requirements are made applicable. See, e.g., Secs. 2—103(1)(b), 7—404. To illustrate, in the Article on Sales, Section 2—103, good faith is expressly defined as including in the case of a merchant observance of reasonable commercial standards of fair dealing in the trade, so that throughout that Article wherever a merchant appears in the case an inquiry into his observance of such standards is necessary to determine his good faith." Ill. Ann. Stat., ch. 26, par. 1—201, Uniform Commercial Code Comment, at 49-50 (Smith-Hurd 1963).

■■ We therefore reject plaintiff's assertion that the "good faith" definition contained in the sales article is applicable to the present case, which arises out of a secured transaction, and hold that the standard of "good faith" in a secured transactions case is "honesty in fact in the conduct or transaction concerned" and does not additionally require "the observance of reasonable commercial standards of fair dealing in the trade."

While the rationale set forth above also causes us to reject plaintiff's application of the "merchant" definition contained in the sales article to this secured transactions case, we recognize that the defendant is a merchant as that term is commonly understood. Defendant testified that he was a partner in the defendant company, which had been in business for a period of more than 20 years and had dealt in, purchased and sold farm equipment and industrial equipment, and that his experience had given

him an understanding of financing arrangements common to a manufacturer-dealership agreement. Also, in this case, the trial court specifically found that the defendant company is a partnership dealing in the purchase for sale to the public of new and used farm equipment. Defendant's knowledge and experience acquired in his activities as a farm equipment dealer has substantial evidentiary significance in determining whether his conduct meets the applicable good faith standard, that is "honesty in fact in the conduct or transaction concerned."

Even though we have determined that the good faith standard to be applied in a secured transactions case is that set forth in section 1—201(19) of the UCC and have rejected plaintiff's contention that the good faith required of a merchant buyer in such a case includes "the observance of reasonable commercial standards of fair dealing in the trade," the evidence adduced at trial shows that defendant's conduct would have met either test.

At trial, plaintiff made no specific allegations of bad faith on the part of defendant other than reference to the size of defendant's purchases. Defendant's unrefuted testimony was that he was unaware that Colusa was having any financial difficulties. As the trial court found, no evidence was offered showing the fair market value of the items sold or the items taken in trade, even though it was within plaintiff's ability to so show. So, there was no possibility of a showing that defendant had paid so much less than fair market value for the goods that bad faith could be inferred. (*International Harvester Co. v. Glendenning* (Tex. Civ. App. 1974), 505 S.W.2d 320, 324.) Also, plaintiff failed to put before the trial court any evidence of what constitutes "reasonable commercial standards of fair dealing in the trade" from which the trial judge could have made a determination as to whether defendant's conduct violated those standards. *First National Bank v. Crone* (1973), 157 Ind. App. 665, 301 N.E.2d 378, 381.

Plaintiff argues that defendant's failure to check or verify the existence of any security agreements or financing statements was evidence of bad faith because failure to do so was inconsistent with commercial reasonableness. There was no evidence adduced that checking or verification was common practice in the trade. Additionally, even if Helland had checked the dealer sales and service agreement, nothing contained therein would have indicated that the sale was unauthorized (compare *Swift v. J.I. Case Co.* (Fla. App. 1972), 266 So. 2d 379).

■■ In short, the material testimony in this case did not reveal any lies, deceit, overreaching or other examples of dishonesty in fact in the transaction (compare *International Harvester Co. v. Glendenning* (Tex. Civ. App. 1974), 505 S.W.2d 320, 325), nor was any evidence adduced regarding reasonable commercial standards of fair dealing in the trade. As

the court found, the amount of equipment purchased in the short span of time in which the transactions took place raised some suspicion, but the evidence presented did not justify the court to do more than speculate. This is because plaintiff failed to show what percentage of its equipment Colusa sold and to whom and whether the sale of 29 to 30 pieces of equipment to one buyer was unusual.

Because plaintiff failed to show at trial the character of the buying market to which Colusa sold, how much of its equipment or what percentage of its equipment Colusa sold and to whom and whether or not Colusa, in the course of its business, regularly dealt with buyers of large lots of equipment such as the defendant, the court was unable to make a finding that the sale of 29 to 30 pieces of equipment by a large dealer, whom plaintiff had authorized and expected to sell such equipment, was outside of the ordinary course of Colusa's business. No evidence was adduced of any restrictions as to whom Colusa was authorized to sell. Despite plaintiff's insistence to the contrary, the language contained in paragraph 12 of the dealer sales and service agreement does not "clearly provide" that Colusa lacked authority to make the kind of sale at issue in the instant case.

Although plaintiff takes issue with the trial court's reliance on the principles expressed in *American National Bank & Trust Co. v. Mar-K-Z Motors & Leasing Co.* (1974), 57 Ill. 2d 29, and *Arena Auto Auction v. Schmerler Ford, Inc.* (1978), 60 Ill. App. 3d 484, it appears that the trial court aptly relied on these cases. Although the purchasers in *Arena Auto Auction* were consumers rather than merchants, they dealt in good faith with the vendor because they had no knowledge that the sale to them was in violation of the ownership rights of a third party. This indicia of honesty in fact in the transaction is also present in the instant case. Whether the plaintiffs here had established that the defendant was not a "buyer in the ordinary course of business" was a question of fact for the trial court, and its conclusion is supported by the evidence. *American National Bank & Trust Co. v. Mar-K-Z Motors & Leasing Co.* (1974), 57 Ill. 2d 29, 33.

■■ ■ A finding that defendant was a "buyer in the ordinary course of business" is supported by credible evidence. Therefore, the transactions in question were authorized dispositions of collateral by Colusa and, under the provisions of section 9—306(2) of the UCC, plaintiff's security interest did not continue in the collateral so that defendant took free of that security interest. Also, in accordance with the provisions of section 9—307(1) of the UCC, defendant, as a buyer in the ordinary course of business, took free of the security interest created by Colusa.

In the "Official Comment" to section 9—307, the UCC drafters state that the limitations imposed by subsection (1) on persons who may take

free of a security interest apply only to unauthorized sales by the debtor and that, in cases where the secured party has authorized the sale in the security agreement or otherwise, the buyer takes free without regard to those limitations. (Ill. Ann. Stat., ch. 26, par. 9—307, Uniform Commercial, at 199 (Smith-Hurd 1974).) Here, the sales to defendant were not unauthorized. The dealer sales and service agreement gave Colusa express authority to dispose of collateral "in the ordinary course of business." (*Draper v. Minneapolis-Moline, Inc.* (1968), 100 Ill. App. 2d 324, 329.) Section 9—306(2) of the UCC provides that the security interest does not continue in the collateral where the disposition was authorized by the secured party, and the "Official Comment" to that section states that, in such cases, the secured party's only right will be to proceeds (Ill. Ann. Stat., ch. 26, par. 9—306, Uniform Commercial, at 189 (Smith-Hurd 1974)).

■■ While it seems that the transactions in this case are more properly governed by UCC section 9—306(2) rather than section 9—307(1) because the transfers appear to have been authorized dispositions of collateral, we need not decide which section applies in this case. Defendant would take free of the plaintiff's security interest under either theory. The trial court determined that plaintiff failed to demonstrate the probability that it would ultimately prevail on its underlying claim to possession, and that determination is amply supported by the evidence adduced at the hearing. Therefore, the order denying the issuance of an order for replevin was not against the manifest weight of the evidence and will not be disturbed on review. Having so found, we need not address the issues raised by the defendant concerning whether or not plaintiff established the other statutory requirement, a *prima facie* case to a superior right to possession of the disputed property. Ill. Rev. Stat. 1979, ch. 119, par. 4c.

For the reasons set forth above, the judgment of the trial court is affirmed.

Affirmed.

SEIDENFELD, P. J., and UNVERZAGT, J., concur.