## CIRCUIT COURT OF RICHMOND COUNTY

Deutz-Allis Corp.

v.

Daniel V. Hutt et al.

Case No. 41–91CH

Thomas D. Carwile

v.

Deutz-Allis Corp.

Case No. 23a-92L

October 2, 1992

BY JUDGE JOSEPH E. SPRUILL, JR.

We have here two cases, one in detinue and one an interpleader action, to determine the ownership of two farm tractors: a Model 9190 Deutz-Allis, Serial Number 2007, and a Model 9130 Deutz-Allis, Serial Number 1057. We have three contestants for these tractors: (1) AGCO, successor in interest to Deutz-Allis, which claims it has a perfected security interest in the equipment; (2) Thomas D. Carwile, who claims to be a good faith purchaser in the ordinary course of business of both tractors; and (3) Daniel V. Hutt, who claims to be a good faith purchaser in the ordinary course of business of the Model 9190 tractor.

These claims arise, with many others, out of the financial collapse of Warsaw Equipment Company. In the weeks prior to its forced closing on August 1, 1991, the chief executive officer of Warsaw Equipment, David Belfield, participated in a series of complex and fraudulent transactions involving the sale of farm equipment resulting in the vic-

timization of customers and creditors of Warsaw Equipment Company. Belfield has since been convicted of several counts of embezzlement.

The evidence establishes, and it is not in dispute, that AGCO has a perfected security interest in Warsaw's inventory and that its security interest extends to the two tractors under consideration here. Therefore, the only issues are whether either Carwile or Hutt is a good faith purchaser in the ordinary course of business as defined in the Uniform Commercial Code. Virginia Code § 8.1–201(9) defines a buyer in the ordinary course of business as:

> a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind . . . . Virginia Code § 8.1–201(9).

### Daniel V. Hutt's Claim

On June 30, 1991, Belfield called on Mr. Hutt at his home and suggested that Hutt should consider taking advantage of a special on 9190 tractors then available at Warsaw Equipment. Hutt had known Belfield for many years and had on past occasions purchased farm equipment and parts from Warsaw Equipment. He was also aware of the exceptional bargains that farmers in the community were finding at Warsaw Equipment. On July 1, 1991, Hutt met Belfield at Warsaw Equipment premises and purchased a Deutz-Allis Model 9190 tractor. The sales price was $55,000.00. Hutt was allowed a $30,000.00 trade-in, and the remaining $25,000.00 was financed interest-free for two years. Hutt acknowledged that he valued his trade-in at $15,000.00 and realized the $30,000.00 allowance was excessive. He testified that Belfield explained that he wished to record the transaction in this fashion for accounting purposes. Hutt felt that a $40,000.00 price was in the range of what these tractors were selling for in the community. The interest-free loan was similar to a loan Hutt obtained from Warsaw Equipment when he purchased a tractor there in 1986.

Hutt requested that this tractor be delivered with dual wheels and was informed that the tractor would arrive in one or two weeks. He made several trips to Warsaw Equipment over the next two weeks, but the tractor had not arrived. Finally, in mid-July, two weeks before the business folded, Belfield pointed out a 9190 Model Tractor, Serial No. 2007, to Hutt. Hutt inspected the tractor and discussed the arrange-

ments necessary to put on the dual wheels. Hutt's son, Daniel Hutt, Jr., corroborated this evidence and testified that he test drove the tractor and could have taken it home but for the fact that the dealer preparation had not been completed.

Belfield testified that he did, in fact, sell this specific tractor to Hutt.

This tractor cost Warsaw Equipment approximately $57,000.00. Hutt, by his own testimony, gave $40,000.00 of value for it. In deciding whether Hutt is a buyer in the ordinary course of business, the only question presented here is whether this inadequacy of consideration sufficiently impugns the requisite good faith. We find that it does not.

Hutt did not initiate this transaction. He was invited and enticed by Belfield to make the purchase. He obviously realized this was a good bargain, but other farmers in the community were also getting good bargains at Warsaw Equipment during this period. There is no evidence to suggest that Hutt was aware of any of the nefarious activities ongoing at Warsaw Equipment at this time or that the sale violated the rights of any other party. Hutt was aware that Belfield had only recently been the recipient of a significant award by Deutz-Allis for salesmanship.

There has been no evidence suggesting that Mr. Hutt's honesty should be called into question or that he has not acted in good faith.

Accordingly, we find Mr. Hutt to be a good faith buyer in the ordinary course of business and as such entitled to possession of the Model 9190 Deutz-Allis Tractor, Serial No. 2007. The terms of his contract, including the trade-in, will be enforced.

### Thomas D. Carwile's Claim

On July 9, 1991, Thomas D. Carwile purchased three tractors from Warsaw Equipment for $100,000.00. These tractors are two Model 9190's with Serial Nos. 2007 and 2014, and a Model 9130, Serial No. 1057. Carwile's sales ticket reflects the three serial numbers, and he claims that all three tractors were present on the premises of Warsaw Equipment Company on July 9, 1991. At this time, he took delivery of the Model 9190, Serial No. 2014. The other two tractors were to be delivered within two weeks after servicing. Before these two tractors could be delivered to Carwile, the assets of Warsaw Equipment Company were seized on August 1, 1991. We now review the evidence to determine whether Carwile is a buyer in the ordinary course of business. If he is, the AGCO claims fails.

A unique relationship existed between Carwile and Belfield. Carwile lived in Cullen, [Charlotte County], Virginia, some distance from Warsaw. Nonetheless, over a period of approximately six months preceding the collapse of Warsaw Equipment, Carwile claims to have sold over forty pieces of new and used farm equipment to farmers in the Charlotte County area. Carwile clearly was an agent of Warsaw. In fact, Carwile had a blank invoice book and wrote invoices for tractors that he sold for Warsaw. Warsaw held checks signed in blank by Carwile. Each claimed that these practices facilitated their arrangement. Carwile initially testified that he participated in this scheme merely to be helpful to Warsaw. It developed, however, on cross-examination, that Carwile himself made substantial sums from these transactions. Carwile further admitted to participating in schemes designed to mislead at least one of Warsaw Equipment's patrons. Further, Carwile himself during this period purchased six tractors which apparently were never delivered. He claims to have purchased ten additional tractors which were delivered to him, the last of which was the 9190 Model tractor delivered on July 9, 1991.

The evidence in this case shows a pattern of activity between Carwile and Belfield that is complex and confusing. There is no need to recount this evidence here. We simply note that it is more than sufficient to warrant a conclusion that the good faith component of the definition of a buyer in the ordinary course of business is not present. Good faith means "honesty in fact." Virginia Code § 8.1–201(19). Carwile has acknowledged using deceptive tactics in at least one instance. He, himself, is an equipment dealer, and he acknowledged a familiarity with farm equipment and farm equipment values. Yet for a period of six months or more, he willfully participated in a series of sales of farm machinery at prices far below Belfield's actual cost. Notwithstanding his claims as an innocent and unwary tractor dealer from the country, his own testimony shows him to be a knowledgeable and experienced operative who participated, sometimes as Belfield's alter ego, in sales of equipment for considerably less than its value without ever investigating AGCO's security interest. Some of these transactions between Belfield and Carwile and other customers of Warsaw Equipment have the unmistakable aura of "sham transactions." Carwile must have known something was amiss here. If he did not know, he should have known. The evidence here completely negates Carwile's contention that he was a buyer in the ordinary course of

business within the meaning of the Virginia U.C.C. Not only was there an absence of good faith, these unorthodox practices could hardly be described as an ordinary course of business. *See, International Harvester Company v. Glendenning,* 505 S.W.2d 320 (1974).

For these reasons, as to the Model 9130 Deutz-Allis Tractor, Serial No. 1057, we find that the AGCO lien has priority.