# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Johnson, 2013 IL App (1st) 120413**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE JOHNSON, Defendant-Appellant. |
| District & No. | First District, Third Division <br> Docket No. 1-12-0413 |
| Filed | August 7, 2013 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The extended term imposed on defendant for armed robbery was vacated and the cause was remanded for resentencing, since the difference between section 5-5-3.2(b)(1) and section 5-5-3.2(b)(7) of the Unified Code of Corrections arising from the legislature's failure to include the language "the same or similar class felony" in section 5-5-3.2(b)(7) led to the absurd result that defendant could be subjected to an extended term based on a prior crime he committed as a juvenile, but not be subject to an extended term if his prior conviction was committed when he was an adult; therefore, the omitted language would be read into section 5-5-3.2(b)(7) for purposes of resentencing pursuant to the purpose of imposing "harsher sentences on offenders whose repeated convictions have shown their resistance to correction." |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-6488 (01); the Hon. John Joseph Hynes, Judge, presiding. |
| Judgment | Vacated and remanded. |

Counsel on Appeal      Michael J. Pelletier, Alan D. Goldberg, and Benjamin Wimmer, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Kathryn A. Schierl, Assistant State's Attorneys, of counsel), for the People.

Panel      JUSTICE MASON delivered the judgment of the court, with opinion.
Justices Hyman and Pierce concurred in the judgment and opinion.

## OPINION

¶ 1      Defendant Willie Johnson was charged by indictment with 11 counts arising out of the armed robbery of Kevin Moyles in Evergreen Park, Illinois. After a bench trial at which the State proceeded on 5[1] of the 11 counts, Johnson was convicted of armed robbery while armed with a firearm, unlawful use of a weapon by a felon, and aggravated battery/great bodily harm.

¶ 2      Following a sentencing hearing, the trial court sentenced Johnson to 50 years for armed robbery while armed with a firearm after finding, *sua sponte*, that Johnson was eligible for extended-term sentencing pursuant to section 5-5-3.2(b)(7) of the Unified Code of Corrections (Code) (730 ILCS 5/5-5-3.2(b)(7) (West 2010)). The court sentenced Johnson to an additional 15 years as a mandatory firearm enhancement, resulting in a total of 65 years. The trial court also sentenced Johnson to two five-year terms for unlawful use of a weapon by a felon and aggravated battery/great bodily harm. These latter terms were to run concurrently with each other but consecutive to the 65 years.

¶ 3      On appeal, Johnson contends his sentence of 65 years for armed robbery while armed with a firearm should be vacated because: (1) the trial court erred in interpreting section 5-5-3.2(b)(7) of the Unified Code of Corrections to impose a harsher sentence on those with prior juvenile records than those with comparable adult convictions; (2) section 5-5-3.2(b)(7) of the Code is unconstitutional both on its face and as applied to him; or (3) the sentence was excessive in light of the mitigating factors he adduced at his sentencing hearing.[2] For the reasons that follow, we vacate Johnson's sentence and remand for resentencing.

---

[1]The State nol prossed four counts prior to trial and one count after the defense rested.

[2]In his opening brief, Johnson also argued that the statute authorizing the imposition of a firearm enhancement to the offense of armed robbery was void, but withdrew this argument on reply in light of our supreme court's decision to the contrary in *People v. Blair*, 2013 IL 114122.

¶ 5    On December 16, 2009, Johnson robbed Kevin Moyles at gunpoint in the back of Barraco's Pizzeria & Restaurant in Evergreen Park.[3] At the time of the robbery, Moyles, who was in the middle of his shift as a pizza deliveryman, was placing food in his car, which was parked in the alley behind Barraco's. As he moved to close the rear car door, he saw two individuals, one of whom he later identified as Johnson, approach him quickly from the front of his car. Johnson put his arm around Moyles' neck and held a gun to his head while his accomplice began rifling through Moyles' car. Johnson ordered Moyles to lie on the ground. When Moyles complied, Johnson hit him on top of the head with his gun. Johnson moved to hit him a second time, but Moyles was looking up at Johnson and was able to deflect the blow with his hands. Johnson then demanded that Moyles empty his pockets and hand over his keys. After Moyles did so, Johnson informed him that they were going for a walk. As they began to walk, Moyles "ripped" away from Johnson and ran back to Barraco's, where the police were contacted.

¶ 6    Officer John Murphy of the Evergreen Park police department, who was on patrol with his partner that evening, received a communication that two black males had committed an armed robbery of a deliveryman at Barraco's and were at large. The officers were in the vicinity of the restaurant when they saw two black men standing on the street corner. As they exited their car and approached the men, the two fled in opposite directions. Officer Murphy initially gave chase to one individual, but lost sight of him.

¶ 7    A K-9 unit was called and Evergreen Park police captain Eiseneis and another officer began a yard-to-yard search of the area in the direction the males had fled. One man was found two blocks from Barraco's trying to secrete himself by the side of a house, and when Moyles was called to the scene, he identified the man as the one who had been going through his car. Captain Eiseneis and his fellow officer continued patrolling to look for the second suspect, whom they found hiding in a dumpster across the parking lot from Barraco's. Moyles was summoned to that location as well and made a positive identification of Johnson as the man who struck him with a gun. On his person, Johnson had a pack of cigarettes and a cell phone. Moyles was not able to identify the cell phone as his, but the cigarettes were the brand that he had in his coat pocket.

¶ 8    Officer Daniel Trujillo was called to the area near Barraco's to recover additional evidence, which included keys, a coat, a wallet, and some change. When the evidence was inventoried at the police station, Moyles identified all of it as belonging to him.

¶ 9    Two days later, a gun was recovered in the gutter of a home approximately one block away from Barraco's. The owner of the home testified she had heard a commotion near the garbage cans by her house on the night of the robbery. Although no prints were recovered from the weapon, Moyles testified that it looked like the gun he saw the night of the robbery.

¶ 10    After hearing closing arguments, the trial court took the matter under advisement and ultimately found Johnson guilty of armed robbery while armed with a firearm, a Class X felony, unlawful use of a weapon by a felon, a Class 2 felony, and aggravated battery, a Class

---

[3]Johnson was accompanied by another individual, who was tried separately as a juvenile.

3 felony. The court ordered a presentence investigation, which disclosed that Johnson had been placed in foster homes from the age of five or six because of his parents' drug use. At some of these homes, he was beaten and abused. Johnson was eventually adopted at the age of 11. From that time on, Johnson regularly drank alcohol, smoked marijuana, and took ecstasy. As a juvenile, Johnson was adjudicated delinquent of the offenses of burglary in 2004 and residential burglary in 2005. Then, as an adult, he was convicted of possessing a stolen vehicle, a Class 2 felony, residential burglary, a Class 1 felony, and criminal trespass to vehicle, a misdemeanor.

¶ 11 The State sought the maximum sentence for his offenses, but did not quantify what that amounted to. The court then determined *sua sponte* that an extended-term sentence was authorized pursuant to section 5-5-3.2(b)(7), reasoning that because Johnson had been adjudicated delinquent of residential burglary, a Class 1 felony, in 2005, he was eligible for an extended-term Class X sentence for armed robbery of between 30 and 60 years.[4] The court ultimately sentenced Johnson to 50 years in prison for armed robbery while armed with a firearm, with an additional 15-year firearm enhancement, and two 5-year terms for unlawful use of a weapon by a felon and aggravated battery. The motion to reconsider sentence was denied, and Johnson now appeals.

¶ 12                                                          ANALYSIS

¶ 13 The primary issue on appeal is whether the trial court erred in sentencing Johnson to an extended term pursuant to section 5-5-3.2(b)(7) of the Code. Because this case turns primarily on the interpretation of this section in relation to section 5-5-3.2(b)(1), it is useful to begin by setting forth both provisions in their entirety as they existed at the time of the crime and sentencing:

"(b) The following factors, related to all felonies, may be considered by the court as reasons to impose an extended term sentence under Section 5-8-2 upon any offender:

(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois or any other jurisdiction of the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts; or

\* \* \*

(7) When a defendant who was at least 17 years of age at the time of the commission of the offense is convicted of a felony and has been previously adjudicated a delinquent minor under the Juvenile Court Act of 1987 for an act that if committed by an adult would be a Class X or Class 1 felony when the conviction has occurred within 10 years after the previous adjudication, excluding time spent in custody[.]" 730 ILCS 5/5-5-3.2(b)(1), (b)(7) (West 2010).

---

[4]The nonextended-term sentencing range for a Class X felony is between 6 and 30 years. 730 ILCS 5/5-4.5-25(a) (West 2010).

The plain language of the statute suggests that an offender who is adjudicated delinquent of what would be a Class 1 felony as a juvenile and less than 10 years later is convicted of a Class X offense, this time as an adult, will be subject to extended-term sentencing. However, an offender who is convicted of a Class 1 felony as an *adult*, and less than 10 years later is convicted of a Class X offense, *is not* subject to an extended term. This is because section 5-5-3.2(b)(1), unlike section 5-5-3.2(b)(7), requires that in order for an offender to be sentenced to an extended term, he or she must have previously been convicted of "the same or similar class felony or greater class felony" for which he or she is currently charged.

¶ 14 Johnson argues that punishing an offender who committed a crime as a juvenile more harshly than an offender who committed a comparable crime as an adult is an absurd result, and he urges us to hold that this was not the legislature's intention in enacting section 5-5-3.2(b)(7). In the alternative, Johnson contends that if we find the legislature did intend such a result, the statute is unconstitutional on its face and/or as applied to him. The State concedes the latter point in its response and agrees the statute is unconstitutional as applied to Johnson.

¶ 15 We agree that read literally, the statute appears to pose a problem under the equal protection clauses of both the United States and the Illinois Constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. Under this clause, the State must treat similarly situated persons in a similar manner. *People v. Kimbrough*, 163 Ill. 2d 231, 237 (1994). For our purposes, the dissimilar treatment of the same class of people–here, adults convicted of felonies–must bear a rational relationship to a legitimate legislative purpose. See *People v. Kaeding*, 98 Ill. 2d 237, 245 (1983); see also *People v. Cornelius*, 213 Ill. 2d 178, 203-04 (2004). In this case, we can discern no rational basis for subjecting Johnson to an extended-term sentence for his juvenile adjudication of delinquency for residential burglary when he could not be subject to an extended term for his adult conviction for the same crime. See *People v. Leng*, 83 Cal. Rptr. 2d 433, 440-41 (Cal. Ct. App. 1999) (likewise concluding that California's "three strikes" law, in which certain juvenile convictions counted as "strikes" while comparable adult convictions did not, violated equal protection).

¶ 16 The State's offer to stipulate that the statute as applied to Johnson is unconstitutional sidesteps the issue of whether the statute, as interpreted by the trial court, leads to an absurd and clearly unintended result. However, resolving this case on the basis proposed by the State invites us to address constitutional issues prematurely. It is possible to interpret section 5-5-3.2(b)(7) to avoid declaring it unconstitutional as applied, and it is on this basis that we render our decision. See *People v. Jones*, 223 Ill. 2d 569, 595-96 (2006) (statute must be construed so as to affirm its constitutionality, if reasonably possible). Although Johnson did not raise an objection to the construction of the statute in the trial court, a sentence that does not conform to a statute is void and may be challenged at any time. See *People v. Roberson*, 212 Ill. 2d 430, 440 (2004). Statutory interpretation presents a question of law that is subject to *de novo* review. *People v. Chapman*, 2012 IL 111896, ¶ 23.

¶ 17 Any interpretation of a statute necessarily begins with the understanding that our primary role is to give effect to the intent of the legislature. *Id*. The best indication of legislative intent is the language of the statute itself, and if that language is clear on its face, it is unnecessary to resort to other aids of construction. *Brucker v. Mercola*, 227 Ill. 2d 502, 513 (2007). Intent

may also be gleaned from the reason for the law, the evils sought to be remedied, and the purpose to be achieved. *People v. Chandler*, 129 Ill. 2d 233, 253 (1989). Thus, we must consider all provisions of the statute as a whole rather than construing words and phrases in isolation. *In re Donald A.G.*, 221 Ill. 2d 234, 246 (2006). Importantly, however, we are not bound by the literal language of a statute if that language produces absurd or unjust results. *Id*. In such an instance, we may modify, alter or supply words to "obviate any repugnancy or inconsistency with the legislative intention." *Community Consolidated School District No. 210 v. Mini*, 55 Ill. 2d 382, 386 (1973); see also *People v. Shephard*, 152 Ill. 2d 489, 498 (1992).

¶ 18      The legislative intent underlying section 5-5-3.2(b)(1) and other recidivist statutes " 'is to impose harsher sentences on offenders whose repeated convictions have shown their resistance to correction.' " *People v. Garcia*, 241 Ill. 2d 416, 421-22 (2011) (quoting *People v. Robinson*, 89 Ill. 2d 469, 476 (1982)). As subsection (b)(7) likewise applies to recidivists, it is reasonable to infer that it was drafted with the same goal in mind.

¶ 19      Nevertheless, subsection (b)(7) has significant limitations that do not exist in subsection (b)(1). For example, subsection (b)(7) limits the prior juvenile offenses that may be used to subject an offender to extended-term sentencing to Class X and Class 1 felonies, while subsection (b)(1) applies to all prior felonies committed by adults. In addition, subsection (b)(7) applies only to adjudications of delinquency under the Illinois Juvenile Court Act of 1987, but subsection (b)(1) applies to felonies committed in all jurisdictions. Considered together, the differences in these sections suggest that the legislature intended to limit the use of juvenile delinquency adjudications as a basis for imposing extended-term sentences.

¶ 20      But subsection (b)(7)'s omission of the phrase "the same or similar class felony" found in subsection (b)(1) obfuscates this intention. Because subsection (b)(7) does not limit the class of prior felonies on which an extended-term sentence may be based to those that are the same or greater than the one for which the offender is currently charged, an adult offender such as Johnson may be subject to an extended term based on a crime he committed as a juvenile but *not* be so subject if he was convicted of that same crime as an adult. As Johnson aptly notes, this anomalous result can occur only under a single set of narrow and unusual circumstances, where a defendant: (1) was previously adjudicated delinquent of a Class 1 felony; (2) was not previously adjudicated delinquent of a Class X felony; (3) does not have a prior adult conviction of a Class X felony; and (4) is currently charged with a Class X felony. It is doubtful the legislature anticipated the occurrence of this fact pattern when drafting subsection (b)(7) and thus saw no need to include the language "same or similar class felony or greater class felony." A conclusion to the contrary defies logic.

¶ 21      As described above, the legislature took great pains to limit the use of juvenile adjudications as a basis for imposing extended-term sentences, making it unlikely the legislature intended to let stand a scenario in which a prior juvenile adjudication of delinquency is treated more harshly than a comparable adult conviction. In order to avoid this absurd result, we hold that the omission of the language "same or similar class felony or greater class felony" was inadvertent and should be read into section 5-5-3.2(b)(7). Pursuant to this reading, Johnson is not subject to an extended term because he did not commit a Class X felony in the 10 years preceding his instant Class X conviction. Therefore, the portion of

-6-

the sentence in excess of the statutory limit is void. See *People v. Perruquet*, 181 Ill. App. 3d 660, 663 (1989). Because the maximum nonextended-term sentence for a Class X felony is 30 years, that portion of the sentence above that term–20 years–imposed by the trial court is void.

¶ 22     The only remaining issue is whether we should vacate Johnson's sentence for armed robbery while armed with a firearm in its entirety and remand to the trial court for resentencing, as Johnson urges, or impose a reduced sentence ourselves, as the State argues. We proceed by way of the former option here.

¶ 23     While a reviewing court has the power to reduce a sentence imposed by the trial court (Ill. S. Ct. R. 615(b)(4) (eff. Jan. 1, 1967)), this power should be exercised sparingly and with caution (*People v. O'Neal*, 125 Ill. 2d 291, 300 (1988)). It is appropriate only where the parties have no new evidence to offer upon remand, or where the proof presented to the trial court is relatively straightforward and uncomplicated. *People v. Jones*, 168 Ill. 2d 367, 378 (1995). For example, in *Jones*, cited by the State, the case was before the supreme court on appeal after the trial court reconsidered its sentence pursuant to the defendant's motion to withdraw his guilty plea and reconsider his sentence. *Id.* at 371. Upon reconsideration, the trial court modified the sentences for the defendant's attempted murder and armed robbery convictions to run concurrently rather than consecutively and increased the sentence for the defendant's attempted murder conviction from 25 to 30 years. *Id.* The appellate court affirmed, but the supreme court reversed and re-imposed the 25-year sentence after holding that the original term was not an abuse of discretion. *Id.* at 371, 381. As justification for declining to remand, the court reasoned that it was unlikely that a trial court that increases a defendant's sentence on reconsideration would decrease the sentence on remand. *Id.* at 379, 381.

¶ 24     We do not have similar guidance as to what sentence the trial court would impose here. As Johnson notes, the court did not impose the maximum extended-term sentence of 60 years for a Class X felony (730 ILCS 5/5-4.5-25(a) (West 2010)), despite the State's request for the maximum sentence; therefore, we cannot say the court would necessarily impose the 30-year maximum nonextended-term for a Class X felony (*id.*). Accordingly, we remand for the trial court to impose a new sentence for Johnson's conviction of armed robbery while armed with a firearm that is within the appropriate statutory limits.

¶ 25                                    CONCLUSION

¶ 26     For the reasons stated, we vacate Johnson's sentence and remand for resentencing.

¶ 27     Vacated and remanded.