# Illinois Official Reports

## Appellate Court

***BMW Financial Services, N.A., LLC v. Felice*, 2017 IL App (2d) 160397**

| | |
|---|---|
| Appellate Court Caption | BMW FINANCIAL SERVICES, N.A., LLC, Plaintiff-Appellee, v. RICHARD D. FELICE and AUTO SHOWCASE, INC., d/b/a Auto Showcase of Carol Stream, Defendants (Auto Showcase, Inc., d/b/a Auto Showcase of Carol Stream, Defendant-Appellant). |
| District & No. | Second District<br>Docket No. 2-16-0397 |
| Filed | March 23, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 13-L-600; the Hon. Ronald D. Sutter, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Vincent C. Mancini and Patrick J. Williams, of Ekl Williams & Provenzale LLC, of Lisle, for appellant.<br><br>Gabriel B. Antman, of Law Offices of Gabriel B. Antman, P.C., of Chicago, and Julie K. Graham and Nelson L. Mitten, of Reizman Berger P.C., of St. Louis, Missouri, for appellee. |
| Panel | PRESIDING JUSTICE HUDSON delivered the judgment of the court, with opinion.<br>Justices Schostok and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, BMW Financial Services, N.A., LLC (BMW Financial), filed a replevin complaint in the circuit court of Du Page County, seeking possession of a 2011 Porsche Panamera. The complaint named Richard D. Felice as defendant, but an amended complaint named both Felice and Auto Showcase, Inc. (Auto Showcase), as defendants. Felice was later dismissed from the action. BMW Financial and Auto Showcase filed cross-motions for summary judgment. The trial court granted BMW Financial's summary judgment motion, denied Auto Showcase's motion, and awarded possession of the Porsche to BMW Financial. Auto Showcase filed a timely notice of appeal. We affirm.

¶ 2                                I. BACKGROUND

¶ 3    For purposes of their cross-motions for summary judgment, BMW Financial and Auto Showcase stipulated in writing to the following material facts. On or about March 13, 2012, Bruce Grant executed a retail installment contract for the purchase of the Porsche. The retail installment contract granted a security interest in the Porsche to BMW Financial. On or about April 4, 2012, the Secretary of State issued an original certificate of title for the Porsche, naming BMW Financial as the first lienholder. Grant later submitted a "lien release letter" to the Secretary of State. BMW Financial did not execute the lien release letter, nor did it ever authorize the release of its security interest. On November 16, 2012, the Secretary of State issued a duplicate certificate of title to Grant. The duplicate certificate did not name BMW Financial as a lienholder. However, the duplicate certificate stated, "This is a duplicate certificate and may be subject to the rights of a person under the original certificate." On or about November 20, 2012, Grant sold the Porsche to Auto Showcase for $47,000. He executed the assignment of title on the duplicate certificate. Auto Showcase conducted computerized searches of the Secretary of State's records. Those searches did not reveal the existence of any liens on the Porsche.

¶ 4    On November 29, 2012, Auto Showcase sold the Porsche to Felice for $59,000. By letter dated January 30, 2013, BMW Financial advised the Secretary of State that the lien release letter submitted by Grant was fraudulent. BMW Financial asked the Secretary of State to "accept this letter as notice that any further attempt to title the [Porsche] without showing [BMW Financial's] lien should be denied." Auto Showcase later brought a *mandamus* action in the circuit court of Du Page County to compel the Secretary of State to issue a certificate of title naming Felice as the owner of the Porsche. The court entered judgment in favor of Auto Showcase, and the Secretary of State issued a certificate of title to Felice. BMW Financial was not a party to the *mandamus* action. BMW Financial subsequently commenced the replevin action giving rise to this appeal. Felice was dismissed after Auto Showcase repurchased the Porsche from him.

¶ 5                                 II. ANALYSIS

¶ 6    Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2014). Furthermore, it is proper to enter summary judgment in favor of a party who is entitled to judgment as a matter of law on the basis of stipulated facts. *LoBianco v. Clark*, 231

Ill. App. 3d 35, 38 (1992). The trial court's ruling on a motion for summary judgment is subject to *de novo* review. *Peacock v. Waldeck*, 2016 IL App (2d) 151043, ¶ 3.

¶ 7                                    A. Perfection of Security Interest

¶ 8     The primary purpose of a replevin proceeding is "to test the right of possession of personal property and to place the successful party in possession of that property." *Koerner v. Nielsen*, 2014 IL App (1st) 122980, ¶ 12. It is undisputed that BMW Financial's right of possession depended on whether Auto Showcase acquired title to the Porsche subject to BMW's security interest. "As a general rule, the holder of a perfected security interest has an interest in the secured property, and the proceeds from the sale thereof, which is superior to the interests of unsecured creditors of the debtor and subsequent purchasers of the secured property." *Herman v. First Farmers State Bank of Minier*, 73 Ill. App. 3d 475, 477 (1979). The perfection of security interests in motor vehicles is governed, in part, by section 3-202(b) of the Illinois Vehicle Code (625 ILCS 5/3-202(b) (West 2014)), which provides, "[a] security interest is perfected by the delivery to the Secretary of State of the existing certificate of title, if any, an application for a certificate of title containing the name and address of the lienholder and the required fee. The security interest is perfected as of the time of its creation if the delivery to the Secretary of State is completed within 30 days after the creation of the security interest or receipt by the new lienholder of the existing certificate of title from a prior lienholder or licensed dealer, otherwise as of the time of the delivery." Section 3-107(a)(3) of the Vehicle Code (625 ILCS 5/3-107(a)(3) (West 2014)) provides, in pertinent part, that a certificate of title shall contain "the names and addresses of any lienholders, in the order of priority as shown on the application." Section 3-108 of the Vehicle Code (625 ILCS 5/3-108 (West 2014)) provides that "[t]he certificate of title shall be mailed or delivered to the first lienholder named in it or, if none, to the owner."

¶ 9     BMW Financial acquired a security interest in the Porsche pursuant to the retail installment contract with Grant. BMW Financial perfected its security interest by applying for a certificate of title that noted its lien on the Porsche. The certificate of title was issued on April 4, 2012. Auto Showcase subsequently purchased the Porsche from Grant on or about November 20, 2012. Had Grant actually paid off his car loan, BMW Financial would have been obligated to execute a release of its security interest and deliver the release and the certificate of title to Grant. 625 ILCS 5/3-205(a) (West 2014). Grant could have then transferred the Porsche to Auto Showcase by executing an assignment of title in the space provided for that purpose on the original certificate. 625 ILCS 5/3-112(a) (West 2014). Instead, he submitted a false release to the Secretary of State, obtained a duplicate certificate of title (see 625 ILCS 5/3-111(a) (West 2014)) that did not identify any liens on the vehicle, and executed the assignment of title on the duplicate certificate.

¶ 10     Auto Showcase maintains that the assignment via the duplicate certificate of title was not subject to BMW Financial's security interest. We disagree. Auto Showcase relies, in part, on section 9-303(b) of the Uniform Commercial Code (UCC) (810 ILCS 5/9-303(b) (West 2014)), which provides, "Goods cease to be covered by a certificate of title at the earlier of the time the certificate of title ceases to be effective under the law of the issuing jurisdiction or the time the goods become covered subsequently by a certificate of title issued by another jurisdiction." Auto Showcase argues that "the issuance of the duplicate Certificate of Title *** *which removed BMW [Financial]'s lien,* must control the determination of possession."

(Emphasis added.) Auto Showcase cites no authority for the proposition that the issuance of a duplicate certificate somehow renders the original certificate ineffective under Illinois law. Indeed, Auto Showcase's argument contorts the meaning of the adjective "duplicate." Section 3-111(a) of the Vehicle Code (625 ILCS 5/3-111(a) (West 2014)) provides for the issuance of a duplicate certificate "[i]f a certificate of title is lost, stolen, mutilated or destroyed or becomes illegible." Furthermore, section 3-111(a) provides that the duplicate certificate "shall contain the legend 'This is a duplicate certificate and may be subject to the rights of a person under the original certificate.' " *Id.* That language would be meaningless if, as Auto Showcase argues, the original certificate were no longer effective. Consequently, we reject Auto Showcase's assertion that, by issuing the duplicate certificate, the Secretary of State "removed" BMW Financial's lien.

¶ 11                                    B. Uniform Commercial Code

¶ 12        Auto Showcase also relies on section 9-337 of the UCC (810 ILCS 5/9-337 (West 2014)) in support of its contention that it holds title free and clear of BMW Financial's security interest. Section 9-337 provides, in pertinent part:

> "If, while a security interest in goods is perfected by any method under the law of another jurisdiction, this State issues a certificate of title that does not show that the goods are subject to the security interest or contain a statement that they may be subject to security interests not shown on the certificate:
>
> (1) a buyer of the goods, other than a person in the business of selling goods of that kind, takes free of the security interest if the buyer gives value and receives delivery of the goods after issuance of the certificate and without knowledge of the security interest; and
>
> (2) the security interest is subordinate to a conflicting security interest in the goods that attaches, and is perfected under Section 9-311(b), after issuance of the certificate and without the conflicting secured party's knowledge of the security interest." *Id.*

¶ 13        Section 9-337 clearly does not apply here. By its terms, section 9-337 applies only to a security interest perfected under the law of another jurisdiction; BMW Financial's security interest was perfected under Illinois law. Although Auto Showcase insists that it should not matter whether the security interest was perfected under Illinois law or the law of another jurisdiction, we cannot simply ignore the plain language of the statute. *Miller v. Sarah Bush Lincoln Health Center*, 2016 IL App (4th) 150728, ¶ 17. That said, we recognize that courts "are not bound by the literal language of a statute if that language produces absurd or unjust results." *People v. Johnson*, 2013 IL App (1st) 120413, ¶ 17. "In such an instance, we may modify, alter or supply words to 'obviate any repugnancy or inconsistency with the legislative intention.' " *Id.* (quoting *Community Consolidated School District No. 210 v. Mini*, 55 Ill. 2d 382, 386 (1973)). Auto Showcase argues that limiting section 9-337 to security interests perfected in other jurisdictions "would achieve absurd results within interstate commerce." We disagree. The following comment accompanying section 9-303 of the UCC is illuminating:

> "Ideally, at any given time, only one certificate of title is outstanding with respect to particular goods. In fact, however, sometimes more than one jurisdiction issues more than one certificate of title with respect to the same goods. This situation results from defects in certificate-of-title laws and the interstate coordination of those laws, not from deficiencies in this Article. As long as the possibility of multiple certificates of

title remains, the potential for innocent parties to suffer losses will continue. At best, this Article can identify clearly which innocent parties will bear the losses in familiar fact patterns." 810 ILCS Ann. 5/9-303, Uniform Commercial Code Comment 6, at 474 (Smith-Hurd 2004).

In enacting section 9-337, the General Assembly evidently discerned a need to afford special protection against hidden lien interests arising under the laws of other states. We see nothing absurd in distinguishing between interstate and intrastate priority conflicts. In any event, section 9-337 is inapplicable because the duplicate certificate clearly indicated, as required by section 3-111(a) of the Vehicle Code (625 ILCS 5/3-111(a) (West 2014)), that others might have rights under the original certificate.

¶ 14 Auto Showcase contends that it "researched the Certificate of Title presented by Grant using all available commercial means for determining whether any encumbrance remained on the vehicle, finding none." According to Auto Showcase, to hold in favor of BMW Financial "would effectively negate the legal significance of Illinois duplicate certificates of title and the ability for consumers and dealers to rely upon records of the Secretary of State." But it is equally true that to hold in favor of Auto Showcase would effectively negate the ability of creditors to rely on the statutory mechanism for protecting their lien rights. And although we sympathize with the plight of a purchaser in Auto Showcase's position who has examined the Secretary of State's vehicle records to confirm that title is unencumbered, Auto Showcase cites no statutory authority or case law for the proposition that errors in those records affect either the validity or the priority of a security interest that was perfected in accordance with section 3-202(b) of the Vehicle Code.

¶ 15 C. Buyer in Ordinary Course

¶ 16 Auto Showcase contends that its customer, Felice, took title free and clear of BMW Financial's lien because he was a buyer in the ordinary course of business. In support of this argument, Auto Showcase cites *American National Bank & Trust Co. of Chicago v. Mar-K-Z Motors & Leasing Co.*, 57 Ill. 2d 29 (1974), and *Massey-Ferguson, Inc. v. Helland*, 105 Ill. App. 3d 648 (1982). In *Mar-K-Z*, an automobile leasing company granted the plaintiff a security interest in one of its rental vehicles. The leasing company then sold the vehicle, but defaulted on its loan. In holding that the buyer took title free and clear, the court relied on section 9-307(1) of the UCC, as in effect during the relevant time frame (Ill. Rev. Stat. 1969, ch. 26, ¶ 9-307(1) (codified at 810 ILCS 5/9-320(a) (West 2014))), which provided that " '[a] buyer in ordinary course of business *** takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.' " *Mar-K-Z*, 57 Ill. 2d at 32. Because Auto Showcase did not create BMW Financial's security interest in the Porsche, that provision does not apply to Auto Showcase's sale to Felice. The outcome of *Helland* hinged on the same UCC provision. Accordingly, *Helland*, like *Mar-K-Z*, does not apply here.

¶ 17 D. Fraud and Unjust Enrichment

¶ 18 Finally, Auto Showcase cites *Carroll v. Curry*, 392 Ill. App. 3d 511 (2009), and *Adams v. Greg Weeks, Inc.*, 327 Ill. App. 3d 380 (2002), for the proposition that (in Auto Showcase's words) "in cases of fraud or unjust enrichment, Illinois courts may consider equitable principles in deciding replevin cases." The argument is meritless. In *Carroll* we observed that,

"where Illinois reviewing courts have applied equitable principles to bar recovery in replevin, it was because allowing recovery would have *sanctioned* fraudulent conduct or resulted in unjust enrichment." (Emphasis added.) *Carroll*, 392 Ill. App. 3d at 517. BMW Financial did not commit fraud, so a judgment in its favor would not sanction any fraud. Nor would a judgment in its favor result in unjust enrichment.

¶ 19                                        III. CONCLUSION

¶ 20        For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 21        Affirmed.