WILMA ADAMS, Plaintiff and Counterdefendant-Appellee, v. GREG WEEKS, INC., Defendant (General Motors Acceptance Corporation, Defendant and Counterplaintiff-Appellant; Wilburn Adams, Counterdefendant-Appellee).

Fifth District No. 5—00—0488

Opinion filed January 25, 2002.

Nelson L. Mitten, of Riezman Berger, P.C., of St. Louis, Missouri, for appellant.

Stephen R. Green, of Law Offices of Armstrong & Green, of Marion, for appellees.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant General Motors Acceptance Corporation (GMAC) appeals from an order of the circuit court of Williamson County entering a judgment in favor of Wilma Adams (plaintiff). On appeal, GMAC raises issues as to (1) whether plaintiff ratified a retail installment contract held by GMAC and (2) whether the trial court erred in denying GMAC's request for a replevin.

## FACTS

The facts of this case resemble a law school hypothetical. Although both parties strongly assert different rights in this matter, much of the evidence appears uncontested. According to plaintiff, on September 13, 1995, plaintiff and her husband, Wilburn Adams, purchased a 1995 Chevrolet pickup from defendant Greg Weeks, Inc. (Weeks). At this time, both defendant and her husband entered into a retail installment contract on a form provided by GMAC. Wilburn Adams signed as the buyer and plaintiff signed as the cobuyer. Under the terms of this contract (the first contract), the payment was to be made in one-year installations over a period of five years.

According to plaintiff, Wilburn Adams returned to Weeks a few days later, purportedly to purchase a bedliner. At that time, a different retail installment contract (the second contract) was presented to Wilburn Adams that would require payments twice a year. Wilburn testified that he signed the document but was never told he was signing a new contract. Although plaintiff never signed this second contract, her purported signature was on the contract. Plaintiff presented testimony from Mark Thompson, an employee of Weeks, that the first contract was destroyed.

GMAC purchased the second contract from Weeks. According to GMAC, it then sent a letter to plaintiff and her husband regarding the second contract, and plaintiff responded in writing that she did not sign the second contract. Leland Barker, an employee of GMAC,

purportedly telephoned plaintiff and informed her that GMAC would agree to the terms of the first contract, but plaintiff refused.

GMAC asserts that plaintiff and her husband made no payments to GMAC or Weeks on the vehicle. GMAC contends that improvements and a repair from an accident were made to the vehicle, even after plaintiff and her husband were informed of GMAC holding the second contract. GMAC also contends that plaintiff and her husband listed the cost of the pickup truck as a business expense on their joint tax returns.

Plaintiff filed a complaint against GMAC and Weeks. Plaintiff sought a declaratory judgment that the second contract was invalid due to the alleged forgery of her signature. Plaintiff also alleged common law fraud and a violation of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 1994)) against Weeks.

GMAC filed a counterclaim against both plaintiff and Wilburn Adams and requested in alternate counts a replevin and a money judgment for their failure to pay on the second contract.

The common law fraud charges of plaintiff against Weeks were tried in front of a jury in May 2000. The remaining counts were tried in front of the bench. The jury found in favor of Weeks and against plaintiff on the common law fraud count. The bench ruled in favor of Weeks and against plaintiff on the claims under the Consumer Fraud and Deceptive Business Practices Act.

The court ruled in favor of plaintiff and against GMAC on her claim that the second contract was invalid as to her. On the counterclaim, the court found in favor of GMAC and against Wilburn Adams in the sum of $33,987.79 plus attorney fees on GMAC's claim of a breach of the second contract. The court denied GMAC's request for the replevin of the truck, finding that plaintiff had a superior right to possession due to the first contract. GMAC appeals.

## ANALYSIS

■ GMAC argues that plaintiff ratified the second contract by keeping the benefits of the contract after she received notice of its purchase by GMAC. Ratification may occur if a party knows of an unauthorized signature but still retains the benefits of the contract (810 ILCS 5/3—403 (West 2000)). According to GMAC, plaintiff's conduct in keeping the truck, therefore, ratified the second contract.

■ Plaintiff contends that GMAC's contention is misplaced because her retention of the vehicle was done pursuant to the first contract and not the second. Indeed, the court ruled, and the evidence suggests, that plaintiff agreed to purchase the truck from Weeks by entering into the first contract. As plaintiff agreed to purchase the truck

under the first contract, it cannot be said that her retention of the truck ratified the second contract.

Plaintiff's retention of the truck was consistent with the terms of the first contract and, therefore, was not a ratification of the second contract. Upon retaining the truck, plaintiff incurred obligations only under the agreement she had entered into—that being the first contract. She incurred no further obligations. Any damages for the failure to fulfill the terms of the first contract must be enforced under that contract. Questions regarding plaintiff's fulfillment of the first contract are irrelevant to the issue of the ratification of the second contract. Any failure to fulfill the terms of the first contract did not create additional obligations under another agreement.

GMAC's contractual rights are limited to the second contract. GMAC was not a party to or a holder of the first contract. As such, the court correctly found that plaintiff has no contractual obligations to GMAC.

GMAC also claims that the trial court erred in denying a replevin. GMAC filed a two-count counterclaim against plaintiff and her husband, Wilburn Adams. Count I was entitled "REPLEVIN" and count II was labeled "BREACH OF CONTRACT." In regard to count II, the court found that Wilburn Adams had executed and ratified the second contract. The court ruled that Wilburn Adams had breached the contract, and it awarded monetary damages to GMAC. In regard to count I, however, the court ruled that GMAC was not entitled to replevin. The court stated, "Because [plaintiff] has a superior right to possession by virtue of the first contract with Weeks, Inc., which GMAC did not purchase, GMAC cannot take possession." (Emphasis omitted.)

GMAC contends that the breach of the second contract by Wilburn Adams entitled it to a replevin of the truck. GMAC points out that the language of the second contract expressly gives the creditor a security interest in the vehicle. Therefore, according to GMAC, it has a statutory right to possession of the vehicle. See 810 ILCS 5/9—101 *et seq.* (West 2000).

■ As a general rule, property and right of possession in a third person are a defense to an action of replevin. 77 C.J.S. *Replevin* § 44 (1994). A security interest is only enforceable against an owner of property if that owner has signed the agreement. *Motz v. Central National Bank*, 119 Ill. App. 3d 601, 608, 456 N.E.2d 958, 963 (1983). Thus, ownership by a third party, such as plaintiff, would normally prevent a replevin. Nonetheless, GMAC raises valid questions as to the appropriateness of allowing plaintiff to claim that her rights under the first contract preclude the replevin of the truck. According to

GMAC, no payments have ever been made by plaintiff for the vehicle. GMAC also contends that it acted in good faith and tried to place plaintiff in the same position she would have been in had the first contract been sold to GMAC. GMAC asserts that plaintiff merely wants a free car.

 Replevin is an ancient remedy that now has statutory authority. Replevin has been classified as a tort action to establish the right of possession in the plaintiff. 66 Am. Jur. 2d *Replevin* § 1 (1996). As statute now controls the procedure for a replevin and the determination of when the rescission of a contract occurs, equity no longer plays a role in such decisions. See *General Motors Acceptance Corp. v. Vaughn*, 358 Ill. 541, 547, 193 N.E. 483, 486 (1934) (establishing that an equitable interest in property is no longer sufficient for a replevin because that issue is addressed by statute). This does not mean, however, that a defendant should be allowed to raise a defense that violates principles of equity. Historically, when entering a judgment in replevin, a court was supposed to adjust the equities between the parties. See J. Cobbey, Practical Treatise on Law of Replevin § 1148 (1890) ("The judgment in replevin should[,] so far as possible[,] adjust all the equities which arise between the parties to the suit in its progress, and in a suit by the general owner against one who claims a special interest"). Corpus Juris Secundum explains how some courts have allowed equitable principles to play a role in replevin: "Since replevin is strictly a proceeding at law, the remedy cannot be invoked in a purely equitable suit, as for rescission, modification, or cancellation of a contract[ ] or to compel performance of a trust. While it has been held that the court, in a replevin action, may not administer equity or apply principles cognizable only in equity, it has also been held that equitable principles do apply to the legal action of replevin, as well as that a statutory action of replevin may be sufficiently flexible to allow determination of equitable rights when such rights relate to the property or rights arising out of the contract, and not to the rescission thereof." 77 C.J.S. *Replevin* § 4, at 313 (1994); see, *e.g.*, *Gemini Equipment Co. v. Pennsy Supply, Inc.*, 407 Pa. Super. 404, 411, 595 A.2d 1211, 1214 (1991). Furthermore, utilizing the principles of equity to ensure that the plaintiff acts in good faith and is not unjustly enriched is consistent with the statutory framework of the Uniform Commercial Code (UCC). See 810 ILCS 5/1—103 (West 2000) (unless displaced by specific provisions of the UCC, the principles of law and equity act as a supplement); 810 ILCS 5/1—203 (West 2000) (requires good faith in all UCC transactions). Equity should not allow plaintiff in this case to claim that the first contract gave her a superior right to possession unless she has either fulfilled the first contract or has an equitable

reason for not doing so. If plaintiff has not fulfilled the terms of the first contract and has no excuse for not doing so, she should not be able to claim a superior right to possession. Upon remand, the trial court should make this determination.

Accordingly, the order of the circuit court of Williamson County is hereby affirmed in part and reversed in part, and this cause is remanded with directions to conduct further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded with directions.

WELCH and HOPKINS, JJ., concur.