JAMES B. CARROLL, Plaintiff-Appellee, v. ALISON E. CURRY, Defendant-Appellant.

Second District    No. 2—07—0812

Opinion filed June 26, 2009.

Enrico J. Mirabelli and Angela M. Buttitta, both of Nadler, Pritikin & Mirabelli, LLC, of Chicago, for appellant.

George E. Weaver, of Law Office of George E. Weaver, of Hinsdale, for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

Following the termination of their romantic relationship, plaintiff, James B. Carroll, brought a two-count action in replevin against defendant, Alison E. Curry, to recover possession of several items of personal property. See 735 ILCS 5/19—101 *et seq.* (West 2006). Count I of plaintiff's complaint sought the return of an engagement ring. Count II sought to reclaim other items of personal property, including a plasma television and audio equipment. The trial court granted summary judgment in favor of plaintiff and against defendant as to count I, ruling that plaintiff was entitled to possession of the ring and ordering defendant relinquish it to plaintiff. The trial court nonsuited count II with prejudice. Defendant timely appeals following the trial court's denial of her motion to reconsider. Defendant contends that the trial court erred when it granted summary judgment in favor of plaintiff, because it utilized a "no-fault" approach to determine which party was entitled to possession of the ring and because a genuine issue of material fact existed regarding whether plaintiff committed acts of infidelity while he and defendant were engaged. For the following reasons, we affirm.

The pleadings, depositions, and affidavits reflect that plaintiff proposed marriage to defendant in late April 2000. At that time, plaintiff offered defendant the ring at issue, which he purchased specifically for the marriage proposal. Although plaintiff and defendant selected the ring together, the parties do not dispute that plaintiff alone paid for the ring or that plaintiff presented the ring to defendant for the sole purpose of encouraging her to marry him. Defendant accepted plaintiff's proposal, the two became engaged, and some months later plaintiff moved into defendant's residence. On November 16, 2005, their relationship ended after defendant accused plaintiff of infidelity and ordered him to leave her home. Plaintiff testified that he considered the engagement terminated as of November 16, 2005. Defendant testified that she intended to end the engagement when she ordered plaintiff to leave and that she later informed her friends and family that the engagement had ended. Plaintiff made no demands for the return of the ring prior to filing the instant replevin action.

Plaintiff filed a motion for summary judgment. On April 18, 2007, the trial court granted summary judgment in favor of plaintiff and against defendant as to count I of the complaint. Defendant filed a timely motion to reconsider, which the trial court denied following argument of the parties. In denying defendant's motion to reconsider, the trial court stated that the appropriate analytical framework lay in contract principles. In particular, the trial court stated that "fault" should not be considered when determining whether plaintiff was entitled to the return of the ring, instead stating that the issue turned on plaintiff's donative intent in presenting the ring to defendant. According to the trial court, defendant's subjective intent in breaking off the engagement should not be considered; instead, the inquiry should be a purely objective analysis of whether defendant failed to perform under her portion of the contract created by the marriage proposal. The trial court also nonsuited count II with prejudice, and defendant filed a timely notice of appeal. Defendant challenges only the trial court's judgment as to count I.

Summary judgment provides an efficient means of disposing of a lawsuit; however, it is a drastic method and should be granted only when the moving party's right to judgment is clear and free from doubt. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2006).

The initial burden of production on a motion for summary judgment lies with the movant (*Bourgonje v. Machev*, 362 Ill. App. 3d 984, 994 (2005)), and if he or she "supplies facts which, if not contradicted, would entitle such a party to a judgment as a matter of law, the opposing party cannot rely upon his complaint or answer alone to raise genuine issues of material fact" (*Carruthers v. B.C. Christopher & Co.*, 57 Ill. 2d 376, 380 (1974)). We review *de novo* a grant of summary judgment. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). Furthermore, we need not rely on the trial court's reasoning to affirm its ultimate decision. *Kibort v. Westrom*, 371 Ill. App. 3d 247, 251 (2007) (stating that "[o]n appeal, the reviewing court is not bound by the trial court's reasoning and it may sustain the trial court's decision on any basis appearing in the record").

■ A vital aspect of this case is the nature of the action itself. Plaintiff's complaint is an action in replevin. Replevin is a strict statutory proceeding, and the statute must be followed precisely. *Universal Credit Co. v. Antonsen*, 374 Ill. 194, 200 (1940); *Jim's Furniture Mart,*

*Inc. v. Harris*, 42 Ill. App. 3d 488, 490 (1976). The primary purpose of the replevin statute is to test the right of possession of personal property and place the successful party in possession of the property. *S.T. Enterprises, Inc. v. Brunswick Corp.*, 57 Ill. 2d 461, 469 (1974). Section 19—101 of the Code of Civil Procedure (the Code) provides that, "[w]henever any goods or chattels have been wrongfully distrained, or otherwise wrongfully taken or are wrongfully detained, an action of replevin may be brought for the recovery of such goods or chattels, by the owner or person entitled to their possession." 735 ILCS 5/19—101 (West 2006). A plaintiff commences an action in replevin by filing a verified complaint "which describes the property to be replevied and states that the plaintiff in such action is the owner of the property so described, or that he or she is then lawfully entitled to its possession thereof, and that property is wrongfully detained by the defendant." 735 ILCS 5/19—104 (West 2006). The trial court then conducts a hearing to review the basis for the plaintiff's alleged claim to possession. 735 ILCS 5/19—107 (West 2006). Following the hearing, an order of replevin shall issue "[i]f the plaintiff establishes a prima facie case to a superior right of possession of the disputed property, and if the plaintiff also demonstrates to the court the probability that the plaintiff will ultimately prevail on the underlying claim to possession." 735 ILCS 5/19—107 (West 2006). Thus, in a replevin action, the plaintiff bears the burden to "allege and prove that he [or she] is lawfully entitled to possession of the property, that the defendant wrongfully detains the property and refuses to deliver the possession of the property to the plaintiff." *International Harvester Credit Corp. v. Helland*, 130 Ill. App. 3d 836, 838 (1985), citing *Hanaman v. Davis*, 20 Ill. App. 2d 111 (1959).

■ Placing defendant's "fault" argument aside for the moment, the pleadings, depositions, and affidavits establish that plaintiff is entitled to possess the ring as a matter of law. There is no dispute between the parties that plaintiff alone purchased the ring or that he gave the ring to defendant for the explicit purpose of proposing marriage. Thus, it is undisputed that the ring was a gift in contemplation of marriage. See *Vann v. Vehrs*, 260 Ill. App. 3d 648, 652-53 (1994) (stating that an engagement ring is a gift in contemplation of marriage); *Harris v. Davis*, 139 Ill. App. 3d 1046, 1047-48 (1986) (same). Gifts given in contemplation of marriage are deemed conditional on the subsequent marriage of the parties, and "the party who fails to perform on the condition of the gift has no right to property acquired under such pretenses." *Harris*, 139 Ill. App. 3d at 1048; see also *Hofferkamp v. Brehm*, 273 Ill. App. 3d 263, 272 (1995), citing *Prassa v. Corcoran*, 24 Ill. 2d 288, 293-94 (1962) (no presumption in Illinois that

gifts given during engagement, as opposed to after marriage, are unconditional). Given that the parties in this case did not marry and that defendant intended to terminate the engagement when she ordered plaintiff to leave her home, clearly the condition attached to the gift of the engagement ring was not fulfilled. The record reflects that plaintiff established his right of possession.

For similar reasons, plaintiff established that defendant wrongfully detained the ring. See *First Illini Bank v. Wittek Industries, Inc.*, 261 Ill. App. 3d 969, 970 (1994) (stating that a plaintiff in a replevin action must prove that the defendant is wrongfully detaining the property at issue). Initially, we note that a replevin action generally cannot be maintained until the plaintiff has made a demand for the surrender of the property and the defendant has refused. See *First Illini Bank*, 261 Ill. App. 3d at 970. The purpose of the presuit demand is to afford the defendant an opportunity to return the property to the one entitled to possession without being put to the expense and annoyance of litigation. *National Bond & Investment Co. v. Zakos*, 230 Ill. App. 608, 612 (1923). However, a demand is not necessary before bringing suit in a replevin action where the circumstances indicate its futility. *First Illini Bank*, 261 Ill. App. 3d at 970, citing *Kee & Chapell Dairy Co. v. Pennsylvania Co.*, 291 Ill. 248, 255 (1920); see also *National Bond & Investment Co.*, 230 Ill. App. at 612. "[W]here it appears that the defendant either before the action was instituted or upon the trial contests the plaintiff's rights upon the merits, or where it appears that a demand would have been of no avail, then none is required, for the law never requires the doing of a useless thing." *National Bond & Investment Co.*, 230 Ill. App. at 612, citing Wells on Replevin §373 (1880). Although the record reflects here that plaintiff made no presuit demand for the surrender of the engagement ring, the record clearly establishes that any such demand would have been unavailing. From the time defendant filed her response to plaintiff's complaint, she has continuously maintained that, because plaintiff breached his promise of fidelity and because plaintiff caused the breakup of the engagement, she was entitled to retain possession of the ring. Therefore, no demand was necessary.

Defendant admitted in her response to plaintiff's summary judgment motion that she had not returned the ring to plaintiff and made no affirmative allegation that someone else possessed the ring at the commencement of the instant action. See *Huber Pontiac, Inc. v. Wells*, 59 Ill. App. 3d 14, 19 (1978) (holding that car dealership could not maintain replevin action where defendant no longer possessed vehicle in question). Additionally, even though the term "wrongful" is not defined in the replevin statute (see 735 ILCS 5/19—101 *et seq.* (West

2006)), the term is used in its legal, rather than equitable, sense and simply means that the party seeking replevin of the object has a greater possessory right to it. See *Frankel v. Otiswear, Inc.*, 216 Ill. App. 3d 204, 217-18 (1991) (holding that detention of a promissory note was not wrongful where the plaintiff divested herself of the right to possess the note under terms of hypothecation agreement); see also *First Illini Bank*, 261 Ill. App. 3d at 970 (stating that a defendant's possession of property lawfully obtained is not wrongful until the plaintiff makes a presuit demand for its return). In the instant case, the undisputed evidence established that defendant possessed the ring and that plaintiff, having established his right to immediate possession, had a superior interest in the ring. Therefore, defendant's continued possession of the ring constituted wrongful detention for purposes of the replevin statute.

Defendant has not come forth with any basis to reach the opposite conclusion. See *Buczkowicz v. Lubin*, 80 Ill. App. 3d 200, 203-04 (1980) (certificate of registration not dispositive in action to replevy show dog where contradictory evidence rebutted presumption that certificate established ownership of dog); see also *Andersen v. Koss*, 173 Ill. App. 3d 872, 876 (1988) (summary judgment in replevin action inappropriate where a genuine issue of material fact existed regarding the nature of parties' contract). Over the course of the proceeding, defendant had opportunities to bring forth evidence challenging plaintiff's right to possess the ring. She did not do so. Because the condition attached to the gift never occurred, and defendant failed to set forth any factual question to the contrary, plaintiff established his right to immediate possession of the ring.

Defendant's sole contention on appeal is that summary judgment was inappropriate because a genuine issue of material fact still existed regarding whether plaintiff committed infidelity so as to render him responsible for the termination of the engagement. Defendant argues that Illinois is a "fault-based" state and that the party responsible for the underlying reason behind a broken engagement is not entitled to the return of gifts given to the other in contemplation of marriage, regardless of which party formally ended the planned nuptials.

The plain language of the replevin statute makes no mention of assessing or considering "fault" when determining whether a replevin plaintiff has met his or her burden. See 735 ILCS 5/19—101 *et seq.* (West 2006). The best indicator of legislative intent is the language of the statute itself, which must be given its plain and ordinary meaning (*Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 216 (2008)), and "[w]e are not at liberty to depart from the plain language and meaning of the statute by reading into it excep-

tions, limitations or conditions that the legislature did not express" (*Petersen v. Wallach*, 198 Ill. 2d 439, 446 (2002)). The legislature was certainly capable of interjecting questions of fault into the replevin statute (see, *e.g.*, 750 ILCS 5/406 (West 2006) (delineating the role of fault in dissolution of marriage proceedings)), but the plain language of the statute indicates that the legislature chose not to do so in this particular enactment. We fail to see where equitable notions of fault are brought forth in the statutory language or framework. See *Hitt v. Stephens*, 285 Ill. App. 3d 713, 717 (1997), citing *General Motors Acceptance Corp. v. Vaughn*, 358 Ill. 541, 547 (1934) (stating that replevin is a legal not an equitable action). Had the legislature intended for fault to be a consideration in replevin proceedings, it would have so provided in the language of the statute.

Certainly, equitable principles are not completely absent from replevin cases. See *Gunn v. Sobucki*, 216 Ill. 2d 602, 618 (2005). However, where Illinois reviewing courts have applied equitable principles to bar recovery in replevin, it was because allowing recovery would have sanctioned fraudulent conduct or resulted in unjust enrichment. See *Gunn*, 216 Ill. 2d at 619-20 (refusing to allow a plaintiff to replevy coin collection where evidence indicated he concocted a sham sale for the purpose of rendering collection unobtainable in divorce proceedings); *Adams v. Greg Weeks, Inc.*, 327 Ill. App. 3d 380, 384 (2002) (refusing to allow a defendant in replevin action to maintain possession of vehicle where it would essentially result in her receiving a "free car"). No such concerns are present in the instant case. The record is devoid of any fraudulent motivations on plaintiff's part to recover the ring. Also, because it was plaintiff who purchased the ring, concerns of unjust enrichment are absent.

Defendant cites to cases from other jurisdictions to support her assertion that a fault-based approach is appropriate in the instant circumstances. The decisions of foreign courts are entitled to respect. *Kostal v. Pinkus Dermatopathology Laboratory, P.C.*, 357 Ill. App. 3d 381, 395 (2005). However, they are not binding upon this court. *VG Marina Management Corp. v. Wiener*, 378 Ill. App. 3d 887, 896 (2008). Furthermore, the use of foreign decisions as persuasive authority is appropriate where Illinois authority on point is lacking or absent. See *Shultz v. Atlantic Mutual Insurance Co.*, 367 Ill. App. 3d 1, 11 (2006); *Fosse v. Pensabene*, 362 Ill. App. 3d 172, 186 (2005). In this case, plaintiff's cause of action is controlled by the Illinois replevin statute, and our state's case law is sufficient to resolve the instant dispute. Insofar as the foreign decisions cited by defendant operate outside that framework, they are unpersuasive.

Additionally, the Illinois cases that defendant cites, *Harris v. Davis*, 139 Ill. App. 3d 1046 (1986), and *Vann v. Vehrs*, 260 Ill. App. 3d 648 (1994), do not provide much guidance in our analysis. In *Harris*, the plaintiff brought suit against his former fiancée to recover the value of an engagement ring after their relationship ended. *Harris*, 139 Ill. App. 3d at 1047. In holding that the plaintiff was entitled to recover the value of the ring, the reviewing court agreed with the plaintiff's assertion that, "where an engagement is terminated because of the fault of the woman, the man is ordinarily entitled to the return of gifts made in contemplation of the marriage." *Harris*, 139 Ill. App. 3d at 1048. Defendant cites *Harris* for the proposition that Illinois utilizes a "fault-based" approach to determine which party is entitled to retain gifts in contemplation of marriage after a failed engagement. While both *Harris* and the instant case involve broken engagements, the similarities end there. The precise procedural posture of the *Harris* case is not clear and, therefore, we cannot conclusively discern whether it was an action in replevin or some other remedial cause of action. See *Harris*, 139 Ill. App. 3d at 1047-48. However, regardless of whether the *Harris* plaintiff's suit was one for replevin, the opinion contains no analysis of the case facts in light of the replevin statute. See *Harris*, 139 Ill. App. 3d at 1047-48. We therefore find *Harris* to be of little guidance in the instant circumstances.

*Vann*, like the case *sub judice*, did concern an action in replevin. See *Vann*, 260 Ill. App. 3d at 651. The plaintiff in *Vann* sought return of an engagement ring after his relationship with the defendant deteriorated and they abandoned their plans to marry. *Vann*, 260 Ill. App. 3d at 652. The plaintiff requested that the defendant return the ring, but she refused to do so. *Vann*, 260 Ill. App. 3d at 652. Neither party explicitly stated that the engagement had ended, but both apparently considered that to be the case. *Vann*, 260 Ill. App. 3d at 652. The trial court made several findings of fact and determined that the actions of both parties ended the engagement. *Vann*, 260 Ill. App. 3d at 652. On review, we stated that, where an engagement is mutually broken, the donor is entitled to return of the ring. *Vann*, 260 Ill. App. 3d at 653. Insofar as *Vann* implicated fault by describing the circumstances of the break-up, it did so for the purpose of determining who terminated the engagement, not in assessing whose conduct justified or caused such a termination. See *Vann*, 260 Ill. App. 3d at 653.

Discrepancy in the use of the term "fault" is common in engagement ring cases. See E. Tomko, Annot., *Rights in Respect of Engagement & Courtship Presents When Marriage Does Not Ensue*, 44 A.L.R.5th 1 (1996). In some cases, a party is "at fault" for the termination of an engagement when his or her acts conclusively end the

planned nuptials; in other cases, the terminology "at fault" refers to the actions of the party whose conduct is the underlying cause for the engagement ending. E. Tomko, Annot., *Rights in Respect of Engagement & Courtship Presents When Marriage Does Not Ensue*, 44 A.L.R.5th 1 (1996). In the instant case, defendant clearly asks us to use fault as a consideration in the latter sense. However, to the extent that *Vann* considered fault by looking to the actions of the parties, it did so only to determine that the actions of both parties formally ended the engagement. See *Vann*, 260 Ill. App. 3d at 652. Therefore, the type of fault-based analysis undertaken by *Vann* is fundamentally different from the type of fault-based analysis that defendant asks us to undertake in this case. *Vann* considered fault in assessing whose actions conclusively ended the engagement, and defendant asks us to use fault to assess whose underlying conduct was responsible for the termination of the engagement. Here, defendant's testimony reflected that she intended to end the engagement when she ordered plaintiff to leave and that she later informed her friends and family that the engagement had ended; thus, there is no need to analyze fault as in *Vann*, because the question that *Vann* answered is not presented. Therefore, *Vann* is distinguishable and does not compel us to mandate an analysis of whether plaintiff's alleged infidelity was the underlying cause of the termination of the engagement.

Additionally, we agree with plaintiff that fault-based inquiries in the context of replevin actions raise troubling policy questions. For example, courts would be asked to consider whether and to what extent a person's sudden weight gain, change in financial status, or adoption of different ideologies constituted fault sufficient to justify breaking an engagement and to justify retaining possession of the property in question. As stated by the lower court in this case, such considerations are inherently subjective. We recognize that one person's justification for breaking an engagement may not be another's. See generally *Heiman v. Parrish*, 262 Kan. 926, 942 P.2d 631 (1997) (discussing justifications for and against a fault-based rule). Thus, crafting an appropriate standard by which to judge actions alleged to have been the underlying cause for the termination of an engagement would be difficult and would pose a significant risk of causing discord and confusion at the trial court level. See *Heiman*, 262 Kan. at 936, 942 P.2d at 638.

Furthermore, inquiry into fault and degrees of fault would not be confined to suits involving gifts in contemplation of marriage, but could extend to replevin actions more generally. For example, a terminated employee who refuses to return his or her employer's property could challenge a suit in replevin by arguing that the termina-

tion resulted from improper or illegal motivations and that he or she is therefore entitled to retain possession of the property. Such situations would transform replevin from an action designed to test the right to possess personal property to one aimed at examining the underlying conduct of the parties. First and foremost, our supreme court has stated that the purpose of the replevin statute is to test the right to possess personal property and place the successful party in possession. See *S.T. Enterprises, Inc.*, 57 Ill. 2d at 473. Interjecting considerations of fault would all but eviscerate the primary purpose of replevin. Absent legislative direction to the contrary, we decline to embrace a rule that would result in a deviation from the plain language of the replevin statute.

In conclusion, plaintiff established that he had a superior right to possess the ring and that defendant was wrongfully detaining it when this action commenced. Defendant did not come forth with any material facts placing these elements into contention. We, therefore, hold that the trial court properly granted summary judgment in plaintiff's favor.

We affirm the judgment of the circuit court of Du Page County.

Affirmed.

ZENOFF, P.J., and HUDSON, J., concur.