2023 IL App (4th) 220519
NO. 4-22-0519

FILED
May 23, 2023
Carla Bender
4ᵗʰ District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| SHELLI D. STINE, | ) | Circuit Court of |
|     Petitioner-Appellee, | ) | Sangamon County |
|     and | ) | No. 17D780 |
| WILLIAM G. STINE, | ) | |
|     Respondent-Appellant. | ) | |
| | ) | Honorable |
| | ) | Matthew Maurer, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court, with opinion.
Justices Steigmann and Zenoff concurred in the judgment and opinion.

**OPINION**

¶ 1   In 2017, petitioner, Shelli D. Stine, filed a petition to dissolve her marriage to respondent, William G. Stine. The parties had been married since 2001 and had one child together. The parties' child is profoundly disabled. Following a 2022 trial, the circuit court entered a judgment dissolving the parties' marriage and, amongst other things, awarding Shelli maintenance in the amount of $776.92 a month for seven years. William now appeals from that judgment, arguing the court's maintenance award should be reversed because it was based upon an erroneous finding Shelli was unable to work (obtain an income-paying job) due to the time and effort she must expend to care for the parties' child. For the reasons the follow, we affirm.

¶ 2          I. BACKGROUND

¶ 3   At trial, the following evidence was presented. Shelli and William separated in

2011. The parties' daughter, Lily, was eight years old at the time of the separation. Since the separation, Lily has lived with, and been cared for by, Shelli. William has not been involved in Lily's care.

¶ 4 Lily, who at the time of trial was 18 years old, has a unique form of cerebral palsy and suffers from epilepsy, seizures, paralytic scoliosis, chronic back pain, gastrointestinal problems, and severe anxiety and depression. In 2016, Lily underwent surgery involving the fusion of 14 vertebrae and the placement of rods in her back. Since that surgery, Lily's capabilities have become more limited due to chronic pain. She has 3 to 10 seizures a day. She cannot be left alone. She cannot sleep alone.

¶ 5 Lily requires anywhere from one to seven medical appointments weekly. The appointments occur in Springfield, Illinois, and St. Louis, Missouri. Lily also requires the administration of medications and topicals and the use of specialized equipment.

¶ 6 Lily attends school one hour a week. At the time of trial, she was not attending school in person. Lily can think and read but is nonverbal. She can convey her feelings. There is no dispute as to her profound disability.

¶ 7 Shelli, who has not obtained an income since 2015, testified she could not obtain an income-paying job because of the time and effort she must devote to caring for Lily, care which included, amongst other things, taking Lily to medical appointments, completing paperwork on Lily's behalf, and sleeping next to Lily to assist her during the night. Shelli explained it took about four hours to get Lily ready for the day and out of the house for any kind of appointment. Shelli also testified she spent between 7 and 15 hours per week completing paperwork related to Lily's equipment, services, and health benefits.

¶ 8 Lily receives additional assistance from Shelli's mother, who is 75 years old, and a

registered nurse. Shelli's mother is a trained caregiver and is paid for 30 hours of service a week. The registered nurse helps from 7 a.m. to 5 p.m. on Mondays through Fridays but is off every other Tuesday and trades those days off for helping on Saturdays. Lily is approved for 90 hours a week of nursing assistance but only receives 48 hours of assistance because of staffing shortages. Certified nursing assistants are not allowed to provide most of the care necessary for Lily. Shelli testified Lily still requires her assistance when nursing assistance is available. The registered nurse cannot drive or transfer Lily.

¶ 9    Lily is eligible to live in a nursing home with government assistance. Shelli believed Lily would not receive the same level of care in a nursing home as the care she provided. William, when asked if Lily would be best served by being placed in a nursing home, testified, "I can't imagine that there would be anyone more attentive to my daughter than Shelli *** at this point in time." William also, when asked if caring for Lily was Shelli's full-time job, testified, "I would agree that it takes a lot to do, yes."

¶ 10    During closing arguments, Shelli, with respect to her request for an award of maintenance, argued she was not employed because of the demands of caring for Lily. William, in response, argued Lily was eligible for nursing care that would allow Shelli to obtain employment, and the decision to forgo such employment to care for Lily was a voluntary decision.

¶ 11    After receiving the evidence and hearing arguments, the circuit court entered a thoughtful and comprehensive 19-page memorandum opinion. In its memorandum opinion, the court found William had not been entirely truthful in his testimony, had quit his job to evade a child-support obligation, and had willfully disregarded an order of support. With respect to Shelli's request for an award of maintenance, the court found Shelli was "unable to work" due to the amount of time and effort she must expend to care for Lily. As a result, the court declined to impute

income to Shelli and considered Shelli's inability to work when reviewing the statutory maintenance factors. For example, the court provided the following analysis with respect to two of the statutory maintenance factors:

"(3) The realistic present and future earning capacity of each party. Shelli has no realistic present or future earning capacity as a result of the amount of time she must devote to Lily's care. She has not worked in years. William has the present ability to earn income. He simply refuses to work outside the home. He also has the ability to earn substantial future earnings. He is very experienced in computers and IT work. He was earning in excess of $70,000.00 a year before he quit.

(4) Any impairment for the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties or having foregone or delayed education, training, employment, or career opportunities due to the marriage. Shelli has not been able to work and earn an income as a result of the time she must devote to Lily's care. Lily will be emancipated on August 30th; however, her need for substantial care and assistance from her mother will continue indefinitely."

The court awarded Shelli maintenance in the amount of $776.92 per month for seven years. The duration of the award, we note, was a downward deviation from the statutory guideline duration.

¶ 12     This appeal followed.

¶ 13                                  II. ANALYSIS

- 4 -

¶ 14    On appeal, William argues the circuit court's maintenance award should be reversed because it was based upon an erroneous finding Shelli was unable to work due to the time and effort she must expend to care for Lily. Specifically, William asserts the court's factual finding Shelli was unable to work is against the manifest weight of the evidence and, therefore, the court abused its discretion by considering that fact when evaluating whether to impute income to Shelli and when reviewing the statutory maintenance factors. Shelli, in response, argues the court's finding she was unable to work is not against the manifest weight of the evidence and, therefore, the court committed no abuse of discretion. Both parties acknowledge the absence of Illinois case law addressing a factually similar situation to the one presented in this case.

¶ 15    Section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/504(a) (West 2020)) sets forth factors for a circuit court to consider in deciding whether to award maintenance. Those factors include, or relate to, the income of each party, the needs of each party, and the earning capacity of each party. *Id.* § 504(a)(1)-(6), (9)-(10). When considering the statutory maintenance factors, income may be imputed to a party if it is found the party has become voluntarily unemployed, is attempting to evade a support obligation, or has unreasonably refused to take advantage of an employment opportunity. *In re Marriage of Van Hoveln*, 2018 IL App (4th) 180112, ¶ 40, 115 N.E.3d 477.

¶ 16    A maintenance award is generally reviewed for an abuse of discretion. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24, 89 N.E.3d 296. However, to the extent a factual finding behind a maintenance award is being challenged, that finding will not be disturbed on review unless it is against the manifest weight of the evidence. *In re Marriage of Sturm*, 2012 IL App (4th) 110559, ¶ 3, 970 N.E.2d 117. A finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the finding is unreasonable, arbitrary, and not

based on the evidence. *Id.*

¶ 17    In this case, William challenges the circuit court's factual finding Shelli was unable to work due to the time and effort she must expend to care for Lily. William maintains Lily was eligible for nursing care that would allow Shelli to obtain employment and the decision to forgo such employment to care for Lily was a voluntary decision. The evidence shows Lily is profoundly disabled and requires constant supervision and assistance. At home, Lily does not receive the amount of approved nursing assistance due to staffing shortages and, even when nursing assistance is available, she still requires the assistance of Shelli. Lily is eligible to live in a nursing home with government assistance. However, Shelli and William agreed Lily would not receive the same level of care in a nursing home as provided by Shelli, and the evidence presented of such an opportunity was otherwise limited. After our review, we conclude, based upon the evidence presented, the court could reasonably find Shelli was unable to work (obtain an income-paying job) due to the time and effort she must expend to care for Lily. The court's finding is not against the manifest weight of the evidence and, therefore, the court did not abuse its discretion by considering Shelli's inability to work when evaluating whether to impute income to Shelli or when reviewing the statutory maintenance factors.

¶ 18    As a final matter, we commend the circuit court for its thoughtful and comprehensive memorandum opinion. It was helpful in our resolution of this appeal.

¶ 19                    III. CONCLUSION

¶ 20    For the reasons stated, we affirm the circuit court's judgment.

¶ 21    Affirmed.

*In re Marriage of Stine*, 2023 IL App (4th) 220519

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Sangamon County, No. 17-D-780; the Hon. Matthew Maurer, Judge, presiding. |
| **Attorneys for Appellant:** | Howard W. Feldman, of FeldmanWasser, of Springfield, for appellant. |
| **Attorneys for Appellee:** | Peggy J. Ryan and Laken N. Smaha, of Sorling Northrup, of Springfield, for appellee. |