NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 230598-U

NO. 4-23-0598

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 21, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| PERFORMANCE EQUITY PARTNERS, INC., | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Rock Island County |
| JOEL A. ALVARADO, | ) | No. 22LM30 |
| Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Richard A. Zimmer, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Zenoff and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's judgment denying plaintiff's complaint for replevin was not against the manifest weight of the evidence.

¶ 2    Plaintiff, Performance Equity Partners, Inc., filed a complaint for replevin against defendant, Joel A. Alvarado, alleging it was entitled to possession of a mobile home defendant used as collateral on a loan made by plaintiff. Following a trial on plaintiff's complaint, the trial court found plaintiff failed to establish it was entitled to possession of the collateral and entered judgment for defendant. Plaintiff filed a motion to reconsider, which the court denied.

¶ 3    On appeal, plaintiff argues the trial court erred in entering judgment for defendant where plaintiff established defendant's default on the loan at trial. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        In November 2022, plaintiff filed a verified complaint for replevin, seeking possession of a mobile home defendant used as collateral to secure a loan from plaintiff in the amount of $25,789. Plaintiff attached to its complaint a copy of a consumer security agreement and a promissory note signed by the parties, along with a copy of the certificate of title of the mobile home showing plaintiff as first lienholder on the property. Plaintiff alleged defendant had defaulted under the terms of the promissory note and subsequently refused its demand to surrender the property. Plaintiff also attached a letter it sent to defendant on October 26, 2022, notifying him that he had defaulted under the terms of the promissory note "by failing to pay the installments due." Plaintiff further alleged defendant was wrongfully detaining the property and asked the trial court to enter an order for replevin and judgment against defendant. Defendant did not file a response to plaintiff's complaint.

¶ 6        In April 2023, the trial court conducted a bench trial on plaintiff's complaint. Plaintiff called its chief executive officer (CEO), Scott MacNeil, and defendant as witnesses. Plaintiff also introduced into evidence a copy of (1) the consumer security agreement, (2) the promissory note, (3) the certificate of title of the mobile home, and (4) defendant's payment history on the loan. Defendant appeared *pro se* and did not present any evidence beyond his own testimony.

¶ 7        MacNeil testified he had been plaintiff's CEO for three years and was responsible for overseeing the company's various departments. He identified plaintiff's exhibits A and B as, respectively, the consumer security agreement and promissory note signed by defendant. MacNeil also identified plaintiff's exhibit C, the certificate of title of the mobile home used to secure the loan. MacNeil testified plaintiff loaned defendant $25,789 on October 7, 2021, in exchange for a security interest in defendant's mobile home. Under the terms of the promissory

note, defendant was required to make monthly payments of $288.28 on the seventh day of each month, with the first payment due on November 7, 2021. MacNeil identified plaintiff's exhibit D as defendant's payment history on the loan, which was generated by plaintiff's loan software program. According to the payment history, defendant made 11 payments between November 2021 and July 8, 2022, for a total of $2,952. Each of defendant's first six payments ranged from $300 to $389.81, while his final five payments ranged from $51.75 to $273.50. Defendant's payment history indicated portions of each payment went towards principal, interest, escrow, and "Other." MacNeil testified defendant had not made a payment since July 8, 2022, and therefore was in default for "[f]ail[ure] to pay."

¶ 8 Plaintiff next called defendant. When asked whether he disputed that he was required to pay $288.28 each month, defendant testified he was paying $366 each month. When asked whether he agreed the last payment he made was on July 8, 2022, defendant responded:

> "[DEFENDANT]: Yes, I do. And at that current time, I had given a fully brief description of why I was behind. At that current time, I was seeking another job, and I was in the middle of a hiring process in between those time frames, and they refused to listen to me about it and refused to take any payments during that time."

Defendant acknowledged he had missed "probably four or five payments" prior to making his final payment on July 8, 2022. Defendant testified he tried to make a payment in in August 2022, but plaintiff refused to accept it from him. According to defendant, plaintiff instead wanted the full past due amount. Following defendant's testimony, the trial court admitted plaintiff's exhibits into evidence without objection.

¶ 9　　　　The trial court *sua sponte* recalled defendant as a witness to question him about why he made numerous monthly payments of $366 when the promissory note indicated his monthly payment was only $288. In response, defendant stated, "That's what they had told me in the contract when I got the paperwork, payments were $366 a month." The court also asked defendant why he was paying into an escrow account. Defendant responded he did not "know what that [was], escrow."

¶ 10　　　　The trial court also recalled MacNeil to ask him why defendant was paying into an escrow account. MacNeil responded that the funds in escrow accounts were "[t]ypically" used to pay personal property taxes and homeowners insurance premiums. The court asked MacNeil to identify where in the exhibits it indicated defendant was required to pay more than $288 each month. MacNeil testified, "[A]ll of our loans carry an escrow requirement, and there's generally a separate escrow disclosure document that discusses how those are calculated." MacNeil acknowledged that plaintiff failed to offer an escrow disclosure statement into evidence. Next, the court asked MacNeil to explain why plaintiff was putting a portion of defendant's payments into an escrow account for homeowners insurance when the consumer security agreement stated only that defendant was required to provide proof of insurance, not that he was required to pay the premium through an escrow account. MacNeil testified all of plaintiff's borrowers were required to have insurance and there was "a separate property insurance disclosure which discusses that in greater detail." Lastly, the court asked MacNeil to respond to defendant's testimony that plaintiff refused defendant's attempts to make additional payments after July 8, 2022. MacNeil testified he doubted the veracity of defendant's testimony and that, "in this situation, the payments must have been too far past due."

¶ 11    Plaintiff argued in closing that "[t]he evidence shows that [defendant] is, in fact, in default and that he has not made a payment since July 8th of 2022. Therefore, plaintiff is entitled to a writ of replevin." Defendant stated in closing only that he wished to continue making payments on the loan.

¶ 12    The trial court concluded plaintiff failed to satisfy its burden of proving defendant had defaulted under the terms of the consumer security agreement and promissory note, and it entered judgment in favor of defendant. The court found there was nothing in the evidence showing defendant was required to pay a certain amount into an escrow account in addition to the $288 he was required to pay under the promissory note. As a result, the court found defendant had been "making extra payments over and above what the exhibits show he's required to make." It also credited defendant's testimony that plaintiff refused to accept payments after July 8, 2022. The court summarized its findings as follows:

        "THE COURT: I'm still going [to] the same place. I don't think the numbers add up, and the burden of proof is on the plaintiff to show it. I've got a problem with the fact that we have charges being assessed against him. There— and saying that, well, there's other documents that aren't here. They should have been here. If that was part of the agreement, particularly when it is so contrary and conflicting to what is set forth in the agreement, if there's something modifying it, that was a necessary fact to be put in here.

        Additionally, the only evidence I have that he—that the full amount was due or a partial amount was due was [defendant's] testimony that he tried to make payments and was told no. Plaintiff's witness doesn't have direct knowledge of that. He talks in generalities of what they do.

I don't see anything in writing or anything of that nature that said these are the amounts that are due, we're accelerating it.

So I don't think plaintiff has proved their case, so I'm going to enter judgment for the defendant."

¶ 13       Plaintiff filed a timely motion to reconsider the trial court's judgment. Plaintiff attached several exhibits to its motion, arguing the documents proved the "escrow payments that were paid were applied as described and agreed to" by the parties. Specifically, plaintiff attached an "Itemization of Amount Financed" form, a "Truth-in-Lending Disclosure Statement," an "Annual Escrow Account Disclosure Statement Account History," a "Property Insurance Disclosure Statement," and a copy of defendant's specialty homeowners insurance policy.

¶ 14       The trial court denied plaintiff's motion to reconsider following a hearing, declining to consider the documents plaintiff attached to its motion as they were not newly discovered.

¶ 15       This appeal followed.

¶ 16                                     II. ANALYSIS

¶ 17       On appeal, plaintiff argues the trial court erred in entering judgment for defendant where it established defendant's default on the loan at trial. Plaintiff also contends the court erred in denying its motion to reconsider.

¶ 18       We note defendant did not file an appellee's brief. However, because the record is straightforward and we find we can address plaintiff's contentions without the aid of an appellee's brief, we will decide the appeal on the merits. See, *e.g.*, *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976) ("[I]f the record is simple and the

claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal.").

¶ 19                                      A. The Complaint for Replevin

¶ 20         First, plaintiff argues the trial court erred in denying its complaint for replevin and entering judgment for defendant where it "established defendant's default and was entitled to possession as a matter of law." Plaintiff contends it established defendant's default through defendant's own testimony admitting he had missed multiple payments and his payment history showing his "failure to make timely payments."

¶ 21         "In Illinois, replevin is strictly a statutory proceeding and the requirements of the statute must be followed precisely." *Harrisburg Community Unit School District No. 3 v. Steapleton*, 195 Ill. App. 3d 1020, 1023 (1990). "The primary purpose of the replevin statute is to test the right of possession of personal property and place the successful party in possession of the property." *Carroll v. Curry*, 392 Ill. App. 3d 511, 514 (2009). This court has described the statutory replevin procedure as follows:

> "Under the statutory procedure, the action in replevin is commenced by filing a verified complaint. The defendant is then given 5 days' written notice of a preliminary hearing on the issuance of the writ of replevin. If the plaintiff can establish a *prima facie* case to a superior right to possession and can demonstrate the probability that he will ultimately prevail in a trial on the merits, then the court issues a writ of replevin which directs the sheriff to seize the property and deliver it to the plaintiff. Before the sheriff can execute the writ, the plaintiff or someone on his behalf must post a replevin bond in double the value of the property. The

sheriff then executes the writ unless the defendant posts a forthcoming bond in the same amount as the plaintiff. The court then holds a trial on the merits of the claim and enters a final judgment." *Jim's Furniture Mart, Inc. v. Harris*, 42 Ill. App. 3d 488, 489 (1976).

"Thus, in a replevin action, the plaintiff bears the burden to allege and prove that he [or she] is lawfully entitled to possession of the property, that the defendant wrongfully detains the property and refuses to deliver the possession of the property to the plaintiff." (Internal quotation marks omitted.) *Carroll*, 392 Ill. App. 3d at 514.

¶ 22 We will not reverse a trial court's findings with respect to the entry of an order for replevin following an evidentiary hearing unless they are against the manifest weight of the evidence. *Massey-Ferguson, Inc. v. Helland*, 105 Ill. App. 3d 648, 651 (1982). "A finding of fact or verdict is against the manifest weight of the evidence where, upon review of all the evidence in the light most favorable to the prevailing party, an opposite conclusion is clearly apparent or the fact finder's finding is palpably erroneous and wholly unwarranted ***." *Joel R. v. Board of Education of Mannheim School District 83*, 292 Ill. App. 3d 607, 613 (1997). "Even if the reviewing court disagrees with the trial court, or might have come to a different conclusion, the decision of the trial court will not be reversed if there is evidence to support it." *La Grange Metal Products v. Pettibone Mulliken Corp.*, 106 Ill. App. 3d 1046, 1052 (1982).

¶ 23 Here, plaintiff argued at trial, as it now argues on appeal, that it proved defendant's default by presenting uncontroverted evidence he had not made a payment on the loan after July 8, 2022. The trial court found plaintiff had failed to satisfy its burden of proving defendant's default. Specifically, the court found defendant had been "making extra payments over and above what the exhibits show he's required to make." The court further found plaintiff

failed to present evidence it had the right to refuse payments from defendant where there was nothing indicating "that the full amount was due or a partial amount was due."

¶ 24 There is adequate evidence in the record to support the trial court's findings and judgment. Under the terms of the promissory note, defendant agreed to make monthly payments of $288.28 on the seventh day of each month, with the first payment due on November 7, 2021. Thus, to comply with the note, defendant was required to make nine payments of $288.28 by July 7, 2022, for a total of $2,594.52. However, according to defendant's payment history, he had actually paid $2,833.81 as of July 5, 2022. Despite having paid more than was required under the note, defendant testified plaintiff refused to accept any further payments after accepting his last payment on July 8, 2022. Therefore, there is evidence supporting the court's finding defendant had been making payments in excess of the required amount such that he was not in default when plaintiff refused to accept any further payments from him. See *id.* ("[T]he decision of the trial court will not be reversed if there is evidence to support it.").

¶ 25 While there is also evidence defendant was required to pay $366 each month, with a portion of the payment going into an escrow account, this evidence conflicted with the plain language of the promissory note. The trial court, sitting as fact-finder, was responsible for resolving any conflicts in the evidence. See, *e.g.*, *Ferguson v. Ferguson*, 144 Ill. App. 3d 1053, 1056 (1986) (noting it is the function of the trier of fact to resolve conflicts in the evidence). The court correctly noted it was plaintiff's burden to prove the allegations in its complaint. See *Carroll*, 392 Ill. App. 3d at 514. Yet, plaintiff's own witness conceded it failed to offer into evidence either the escrow account disclosure statement or the property insurance disclosure statement showing defendant had agreed to pay a certain amount into an escrow account in addition to the $288 per month he agreed to pay under the promissory note. Accordingly,

because there is evidence in the record to support the court's judgment denying plaintiff's complaint for replevin, we find it was not against the manifest weight of the evidence.

¶ 26                                    B. The Motion to Reconsider

¶ 27        As noted above, plaintiff also argues the trial court erred in denying its motion to reconsider because it established defendant's default and its right to possession where defendant "admitted at trial he ha[d] ceased paying since July of 2022 and thereby admitted default." Plaintiff asserts the court "should have found in [its] favor 'as an error in the court's application of existing law.' "

¶ 28        "The purpose of a motion to reconsider is to bring to the trial court's attention (1) newly discovered evidence not available at the time of the hearing, (2) changes in the law, or (3) errors in the court's previous application of existing law." *Stringer v. Packaging Corp. of America*, 351 Ill. App. 3d 1135, 1140 (2004). "The decision to grant or deny a motion to reconsider lies within the trial court's discretion, and we will not disturb the court's ruling absent an abuse of discretion." *Id.* "An abuse of discretion occurs when the *** court's decision is arbitrary, fanciful or unreasonable or where no reasonable person would agree with the position adopted by the *** court." (Internal quotation marks omitted.) *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9.

¶ 29        Here, the trial court denied plaintiff's motion to reconsider on the basis that the additional documents it attached to its motion—namely, the "Itemization of Amount Financed," the "Truth-in-Lending Disclosure Statement," the "Annual Escrow Account Disclosure Statement Account History," and a copy of defendant's specialty homeowners insurance policy—did not constitute newly discovered evidence entitling plaintiff to reconsideration. Plaintiff does not argue on appeal that the court erred in finding the evidence was not newly

discovered, nor would we accept such a contention had it been raised. See, *e.g.*, *Stringer*, 351 Ill. App. 3d at 1141 ("To present newly discovered evidence, a party must show that the newly discovered evidence existed before the initial hearing but had not yet been discovered or was otherwise unobtainable."). Instead, plaintiff argues it was entitled to reconsideration due to "errors in the court's previous application of existing law." *Id.* at 1140. However, as discussed above, the court did not err in entering judgment for defendant where plaintiff failed to satisfy its burden of proving defendant had defaulted on the loan. Accordingly, we find the court did not abuse its discretion in denying the motion to reconsider. *Id.*

¶ 30                                 III. CONCLUSION

¶ 31            For the reasons stated, we affirm the trial court's judgment.

¶ 32            Affirmed.