NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241361-U

NO. 4-24-1361

IN THE APPELLATE COURT

FILED
May 22, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| CHRISTINA LUEPKES, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| SUSAN GOOD and TONY GOOD, | ) | No. 23CH70 |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Lisa R. Fabiano, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Steigmann and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, holding that the trial court's factual finding that a
condition did not exist as to the gift was not against the manifest weight of the
evidence.

¶ 2    This case revolves around the ownership of a labradoodle named Eloise. On

appeal, plaintiff, Christina Luepkes, asserts the trial court erred when it held that defendants,

Susan and Tony Good, had superior ownership rights to the dog. Christina argues that when she

gifted Eloise to her daughter Nicole (who later gave her to defendants), she attached a condition

that if Nicole ever decided she no longer wished to keep the dog, she would return it to her.

Defendants ask us to affirm the trial court.

¶ 3    For the following reasons, we affirm the trial court's judgment.

¶ 4                          I. BACKGROUND

¶ 5        At some point around late February or early March 2023, Eloise, who was a puppy, was brought into Christina's home, and at that time, Christina named her Peanut. Eloise appeared sickly and in need of care, which Christina provided. She bottle-fed Eloise and took her to the veterinarian's office in June 2023, where she was found to be healthy. By the end of June 2023, Christina had Eloise vaccinated, spayed, and registered with Winnebago County Animal Services.

¶ 6        When Eloise was brought into Christina's home, Nicole also resided there. Nicole moved out of the home and lived with her sister around April 2023, and then, at some point in July 2023, Christina allowed Nicole to take Eloise with her. Within days of taking Eloise, Nicole decided to relinquish Eloise to defendants, her aunt and uncle. Defendants drove three hours to meet Eloise, and, ultimately, they took her home with them.

¶ 7        Christina, who did not know of this transfer, discovered that defendants took possession of Eloise shortly thereafter. Christina asked Nicole to have defendants return Eloise, and after she did not, Christina reached out to defendants. The parties communicated back and forth regarding the proper ownership of Eloise. After her unsuccessful attempts at retrieving Eloise, Christina filed a complaint for detinue and damages in October 2023, and the case proceeded to a bench trial on September 17, 2024, nearly a year later.

¶ 8        Christina proceeded *pro se* at trial. She began by testifying in the narrative. She recounted the events that occurred between March 2023 and July 2023 regarding Eloise. She recalled that Nicole believed that "having an [emotional support animal] might help her" with her anxiety, and Christina said she would allow Nicole to take Eloise to see if she was a good fit. However, Christina added that she allowed Nicole to have Eloise "as long as she returned [Eloise] to [Christina] if she had issues, it wasn't working out, [or] she couldn't take care of her."

She testified that Nicole agreed. On cross-examination, Christina testified that although Nicole lived at her home when Eloise first arrived, Nicole did not help care for Eloise in any way that was different from how Nicole interacted with Christina's other dogs. Christina further testified that no written contract was executed expressing the terms to which she earlier testified. She also testified that her agreement with Nicole did not have any time restrictions or end date.

¶ 9　　　　　Nicole testified that she lived with Christina from approximately January 2023 to April 2023, at which time Christina began fostering Eloise. She also testified that "the deal was always when I moved out, I would take her with me." She recalled that Christina never changed her mind but had some "hesitations and reservations." Nicole stated that she helped take care of Eloise while she was living with Christina. She also recounted visiting her father, who lived in North Carolina, and showing him pictures while referring to Eloise as her dog. She stated that she always considered Eloise to be her dog.

¶ 10　　　　　Nicole then testified that she did not take Eloise with her when she first moved out because of a vacation occurring shortly after moving. She testified that Eloise lived with her for about a week or two, but because Eloise had too many issues for her and her sister to handle in addition to caring for her sister's dog, they decided to pick one dog to keep. They chose her sister's dog, which was older, and decided that Eloise would have a good home with defendants. Nicole testified that she contacted defendants about Eloise and believed defendants would be a good fit. Ultimately, Nicole testified that she fully believed Eloise was her dog and that she could give her to someone else.

¶ 11　　　　　On cross-examination, Christina asked Nicole about their agreement that she would return Eloise to Christina if she had any issues or could not take care of her. Nicole stated that Christina did ask her to do that, but she did not think that Christina's home was a good

environment for Eloise because Christina already had six dogs. When asked again if she agreed with Christina's description of their agreement, Nicole responded, "I guess so."

¶ 12　　　　Defendant, Susan Good, testified that she and her husband had possession of the dog who they had since renamed Eloise. She confirmed Nicole's testimony regarding how defendants came to possess Eloise. She then testified that when she received Eloise, she fully believed that she belonged to Nicole and that Nicole could give her away. Susan testified as to defendant's exhibit No. 2, which was defendants' license for Eloise. The license showed that Eloise was vaccinated for rabies and defendants owned her. She testified that Eloise has been healthy and acclimated to defendants' home. Defendants also provided proof that they continued to take Eloise to veterinary visits at Bayview Veterinary Clinic in Mukwonago, Wisconsin, and had Eloise groomed. Susan testified that while Christina reached out to her about returning Eloise, she did not entertain the idea.

¶ 13　　　　After argument, the trial court entered a judgment in favor of defendants. The court found that Christina gave Eloise to Nicole and Nicole had the authority to give Eloise to defendants.

¶ 14　　　　This appeal followed.

¶ 15　　　　　　　　　　　　　　II. ANALYSIS

¶ 16　　　　　　　　　　　　　A. Standard of Review

¶ 17　　　　We begin by first addressing the appropriate standard of review in this case. Both parties ask us to apply a manifest weight of the evidence standard. The parties are partially correct. Our supreme court's general rule in civil cases is that appellate courts review legal issues *de novo* and factual issues under a manifest weight of the evidence standard. See *Samour, Inc. v. Board of Election Commissioners of the City of Chicago*, 224 Ill. 2d 530, 548 (2007).

¶ 18                                    B. Merits

¶ 19            While, for many, dogs are considered part of the family, under the law, they are

considered personal property. See *Leith v. Frost*, 387 Ill. App. 3d 430, 436 (2008) (generally

referring to pets as personal property). When a defendant claims ownership of property as a gift,

three elements must be proved by clear and convincing evidence: (1) donative intent, (2) the

donor's exclusive dominion and control over the gift, and (3) delivery of the gift to the donee.

*Koerner v. Nielsen*, 2014 IL App (1st) 122980, ¶ 18. Here, none of those elements are in dispute.

The parties do not dispute that Christina had donative intent, that Christina had exclusive

dominion and control over Eloise before giving her to Nicole, or that Christina surrendered

*possession* of Eloise to Nicole. The parties also agree that Nicole had possession over Eloise  and

Nicole gave Eloise to defendants, who now retain possession. At issue is whether Christina's gift

of Eloise to Nicole had a condition attached to it; specifically, whether, if Nicole found Eloise to

be too difficult to care for, she would return her to Christina.

¶ 20            Courts have continuously recognized conditional gifts in Illinois, usually in the

context of engagement rings. In those cases, courts have observed a "party who fails to perform

on the condition of the gift has no right to property acquired under such pretenses." *Harris v.

Davis*, 139 Ill. App. 3d 1046, 1048 (1986) (citing *Rockafellow v. Newcomb*, 57 Ill. 186 (1870)).

In *Harris*, the court stated that "a gift given in contemplation of marriage is deemed to be

conditional on the subsequent marriage of the parties." *Id*. at 1048; see *Carroll v. Curry*, 392 Ill.

App. 3d 511, 514 (2009). Thus, engagement rings given in contemplation of marriage were

ordered returned to the donors because the parties called off the wedding, resulting in the

condition subsequently being unfulfilled and the defendants relinquishing their rights to the

rings.

¶ 21　　　　Here, if the trial court found that the intent was to attach a condition to the gift, it would be enforceable under Illinois law. Thus, the question becomes a factual one regarding the intent of the parties. (To the extent the trial court misstated the law on this subject in its oral ruling, we disagree with that statement but ultimately hold that its finding that Nicole had ownership of Eloise and that no condition was attached was not against the manifest weight of the evidence.)

¶ 22　　　　As stated, we review a trial court's factual determinations under the manifest weight of the evidence standard. *Supra* ¶ 16. "A finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the finding is unreasonable, arbitrary, and not based on the evidence." *In re Marriage of Stine*, 2023 IL App (4th) 220519, ¶ 16. Under this standard, we give great deference to the trial court, as it is in a "superior position to determine and weigh the credibility of the witnesses, observe witnesses' demeanor, and resolve conflicts in their testimony." *Wade v. Stewart Title Guaranty Co.*, 2017 IL App (1st) 161765, ¶ 59. As such, we will not substitute our own judgment for that of the trial court and will not overturn a trial court's factual findings merely because we may not agree with the court or because we might have reached a different conclusion. *Diocese of Quincy v. Episcopal Church*, 2014 IL App (4th) 130901, ¶ 38.

¶ 23　　　　Both parties assert the record unequivocally supports their arguments. The trial court held that Nicole had sole ownership of Eloise and the authority to give Eloise to defendants, without condition. This was based on the court's finding that the parties intended, from the moment Christina came into possession of Eloise, that Eloise would belong to Nicole. There was testimony presented at the bench trial that Christina and Nicole discussed Nicole returning Eloise in the event she no longer wanted to care for Eloise. On the other hand, there

was also testimony presented that Eloise was always intended to be Nicole's dog, and once Eloise was in her possession, Eloise was entirely her dog, to do with as she pleased. Reviewing the record, we cannot say that the trial court's factual finding was unreasonable, arbitrary, or not based on the evidence.

¶ 24                                    III. CONCLUSION

¶ 25         In sum, although Illinois law recognizes the existence of conditional gifts, the trial court here found no such condition existed, and the court's factual finding was not against the manifest weight of the evidence.

¶ 26         Affirmed.